290 P.2d 732

H. W. BLAINE, d/b/a Blaine Realty Company, Appellant,

v.

George W. STINGER, Marie Stinger and Mary Polk, Appellees.

No. 5979.

Supreme Court of Arizona.

Nov. 29, 1955.

Paul H. Primock, Phoenix, for appellant.

Westover & Mansfield, Yuma, for appellees.

PHELPS, Justice.

This is an appeal from a judgment in favor of defendants in an action wherein plaintiff sought to recover commission for the sale of real and personal property listed with him by the defendants.

The facts are that on or about October 27, 1952, George Stinger, one of the defendants, gave plaintiff, H. W. Blaine, an exclusive listing for the sale of a number six liquor license, bar, service station, etc., and lodge consisting of seven cabins, known as the Mohawk Lodge, located 57 miles east of Yuma, Arizona, for the total price of $37,500. Included in said listing is a notation in handwriting: stock and equipment, $10,000—10% commission, $27,500—5% commission. Just what is meant by "stock and equipment" is nowhere made to appear in said listing. The liquor license stood in the name of Mary Polk, mother-in-law of George Stinger. The remainder of the property stood in the name of George W. Stinger and Marie Stinger, his wife. Stinger and wife joined with Mary Polk in signing the contract of sale of the liquor license.

The listing agreement between George W. Stinger and the plaintiff provides in part:

"Stock and equipment $10,000—10% Com. This contract to continue until Feb. 1, 1953, and thereafter until terminated by me or us giving you notice in writing; and I or we agree to pay you a commission of 5% of the sales price in the event you produce a purchaser in accordance with the above terms and conditions or in the event a sale is made by me or us through any other agent during the term of the exclusive listing, or within 90 days after the expiration of said period a sale is made to any person to whom the property has been shown by you."

On or about January 8, 1953, a meeting was held at Mohawk Lodge by the plaintiff, Blaine; George and Marie Stinger; Kenneth Haydis, the prospective purchaser; and an employee of plaintiff, D. C. Hales. At that time the written agreement in question was executed by Mary Polk, George Stinger and wife and Kenneth G. Haydis. This contract provided for the sale of the liquor license only, for the sum of $20,000 to be paid as follows: $5,000 immediately as earnest money, $10,000 on completion of the transfer of liquor license, and $5,000 by note to be amortized over a period of five years, the sellers agreeing to sell the license on the terms and conditions provided in said agreement and to pay plaintiff a commission of $1,500 therefor. The contract further provided in part that:

"* * * Seller has 2 weeks to investigate Buyer's Financial Integrity. If dissatisfied, other financial arrangements are to be made. Buyer to pay investigation fee, not to exceed $25.00."

This contract was signed by all the parties defendant and accepted by Kenneth G. Haydis.

On January 24, 1953, a contract for the sale of a small government lease, The Mohawk Lodge with all buildings, equipment and tow-truck and Post Office was made between George Stinger and wife and Alvin M. Clark, providing insofar as material here that:

. "This deal is contingent upon the transfer of the #6 Liquor license from Mary Polk to Kenneth Haydis being consummated."

The defendants employed an attorney, William H. Westover of Yuma, to which Haydis agreed, to make an investigation of the "financial integrity" of Kenneth Haydis. He did so, and came to the conclusion that his financial integrity did not justify the acceptance by defendants of his $5,000 unsecured note, on the balance of the purchase price of the liquor license, and reported the same to the Stingers.

Thereafter, George Stinger contacted the plaintiff, and informed him that Haydis' financial integrity was not satisfactory and that he could not accept his unsecured note of $5,000 on the balance of the purchase price of the license. Stinger at that time notified plaintiff that if Sam Haydis, the father of Kenneth Haydis, would co-sign the note with his son, he would accept it. Plaintiff thereafter notified Stinger that Sam Haydis refused to co-sign the note with his son. Thereupon, Stinger, in a

further endeavor to reach an agreement upon other financial arrangements which the contract provided should be made, procured the preparation of written restrictions on the liquor license which provided in effect that in the event the purchaser, Kenneth Haydis, did not perform the contract according to its terms, the liquor license was to be transferred to defendants. It further provided that the liquor license was not to be transferred without the consent of Mary Polk. Stinger enclosed this document in a letter written to plaintiff on January 15, and requested that he have Haydis and Mary Polk execute the same before a notary public. Kenneth Haydis declined to accept this offer of defendants and upon receipt of the restrictions upon the liquor license, on, to wit, January 22, 1953, wrote a letter to the plaintiff and defendant, George Stinger, stating that he considered the contract between them null and void upon the ground that Stinger's letter of January 15 indicated that Stinger and wife and Mary Polk "were without authority" to sign their agreement with him bearing date January 8, 1953. He also notified them in that letter that he was stopping payment on his check for $5,000 deposited as earnest money and to be applied on the purchase price of said liquor license. However, on March 14, 1953, Haydis, in a letter addressed to all of the defendants, demanded specific performance of his contract with them which he had theretofore declared to be null and void. He did not indicate in this letter if he had cancelled

his stop-payment order on his $5,000 check. On March 1, 1953, the defendants sold the liquor license and bar through another broker to E. F. Sanguinetti, Rosemarie Gwynn and Norman H. Sanguinetti for $21,500.

It is the plaintiff's contention in the first assignment of error that his obligation under the contract of sale was fully met when Haydis signed the contract to purchase the liquor license regardless of whether the sale was completed or not, and cites in support thereof Lockett v. Drake, 43 Ariz. 357, 31 P.2d 499; Eason v. Heighton, 49 Ariz. 237, 65 P.2d 1373, at page 1375, and Sligh v. Watson, 69 Ariz. 373, 214 P.2d 123. Plaintiff seems to misapprehend the legal effect of the clause in said contract providing that "Seller has 2 weeks to investigate Buyer's Financial Integrity. If dissatisfied, other financial arrangements are to be made. * * *."

Under the express terms of this clause, if upon invesitgation the defendants found Haydis to be an unsafe financial risk, then and in that event other financial arrangements were to be made. That could only be done by further negotiations resulting in a meeting of the minds as to what those financial arrangements were to be.

Had defendants, after investigation, found Haydis' financial integrity to be satisfactory, there would be some merit to plaintiff's contention but their investigation found such financial integrity to be unsatisfactory, thus necessitating a new agreement upon that portion of the contract. Stinger made Haydis two offers in an effort to reach an agreement. These were both rejected by Haydis. Therefore no binding contract was ever consummated between Haydis and the defendants in this case. It was a conditional contract to become binding only in the event that a new financial arrangement could be agreed upon should Haydis' financial integrity prove unsatisfactory to defendants. Colton v. Gumplo, 217 Cal. 554, 20 P.2d 44; McAdoo v. Moore, 70 Cal.App. 408, 233 P. 391. This latter case involves the same legal question. Ball v. California Conserving Co., 189 Cal. 326, 207 P. 1011; Watson v. Odell, 58 Utah 276, 198 P. 772, 20 A.L.R. 280; Osburn v. Addington, 91 Kan. 586, 138 P. 603.

It was unsatisfactory, as above, stated, and the parties were never able to agree upon new financial arrangements. No contract having ever been finally consummated between Haydis and the Stingers and Mary Polk for the sale of the liquor license, plaintiff is not entitled to recover his commissions under the terms of his listing agreement with defendants.

Likewise he is not entitled to recover commission upon the conditional contract of sale between Stinger and wife and Alvin M. Clark wherein the lodge, government lease, equipment, etc., were sold to Clark upon the condition that the transfer of the number six liquor license from Mary Polk to Kenneth Haydis was consummated.

The liquor license was not transferred from Mary Polk to Kenneth Haydis, therefore said contract never became a binding, valid contract of sale.

Counsel for plaintiff argues that if defendants had approved the financial integrity of Haydis, they could have enforced specific performance of the contract by Haydis, thereby assuming that it was defendants' duty to have done so. This assumption has no basis upon which to rest. The condition, that if Haydis was unsafe as a financial risk, new financial arrangements would have to be agreed upon, was of the very essence of the contract.

 Plaintiff's second assignment of error is that it was an abuse of discretion by the trial court to refuse to strike portions of his complaint both at the close of plaintiff's case in chief and at the close of defendants' evidence and that this abuse of discretion amounted to reversible error. The portion of plaintiff's complaint which he sought to have stricken is that portion of paragraph five hereinafter set out haec verba which we italicize.

Paragraph five of the complaint reads as follows:

"That the said purchasers procured by the plaintiff for the defendants were then and there willing, ready and able to complete the purchase upon the terms and conditions fixed and agreed upon by the defendants with the prospective purchasers; that the defend-ants, without legal cause or just reason, refused to proceed with the sale with the said purchasers procured by the plaintiff *and that the defendants did wait until said exclusive listing had expired* and then proceeded to sell said personal property to E. F. Sanguinetti, Norman H. Sanguinetti, Rosemarie S. Gwynn, of Yuma, Arizona." (Emphasis supplied.)

Paragraph two of plaintiff's complaint expressly alleges that the exclusive listing contract expired February 1, 1953. No request was made to amend this portion of the complaint, therefore the striking of the words sought to be deleted from paragraph five would not have made any material change in the basis of plaintiff's cause of action, or in his right to recover thereon.

It will be observed that plaintiff's cause of action as pleaded is based upon the contract between Haydis and the defendants. Stingers and Polk, and the contract between Alvin M. Clark and the Stingers, hereinabove mentioned, and the refusal of the Stingers, without legal cause or just reason, to proceed with the sale to Haydis. whom the plaintiff had procured as a. prospective purchaser thereof.

Nowhere in the pleadings before the trial court did plaintiff seek to recover commission upon the sale made to the Sangui-nettis based upon the ground that such sale was made during the existence of an exclusive contract between plaintiff and defendants for the sale of said property.

The only ground upon which plaintiff could possibly have recovered is upon the theory that the sale was made to the Sanguinettis during the period when his exclusive contract to sell the property was still in existence. The pleadings with or without the proposed amendment could not justify a judgment on that theory.

Judgment of the trial court is affirmed.

LA PRADE, C. J., and UDALL, WINDES and STRUCKMEYER, JJ., concur.