462 P.2d 809

**Robert A. TRIMMER and Dorothy Trimmer, his wife; and John W. Trimmer and Edith R. Trimmer, his wife, Appellants,**

**v.**

**George C. LUDTKE, Appellee.**

**No. 9668.**

Supreme Court of Arizona.

In Division.

Dec. 22, 1969.

Rehearing Denied Feb. 3, 1970.

Choisser & Choisser, Phoenix, for appellants.

Powers & Rehnquist, Phoenix, for appellee.

UDALL, Chief Justice.

We are called upon in this appeal to determine whether a real estate broker's commission was earned. Summary judgment was entered for plaintiff, a real estate broker, in this action for his commission against defendants, the owners of the realty in question.

The following facts are undisputed. On September 22, 1966, defendants executed an open listing agreement with the plaintiff broker, for the sale of their property. On October 5, 1966 plaintiff produced a prospective purchaser, Engine Supply Inc., and a "purchase contract and receipt" was executed by Engine Supply and defendants. The purchase price was $1,000 down and $65,700 at the close of escrow. The $1,000 was paid and the buyer was to secure a new mortgage on the property for the balance. The purchase contract and receipt provided that the property was to be "subject to new

mortgage to buyers satisfaction". On October 19, 1966, plaintiff asked defendants to sign blank escrow instructions, which provided in part: "It is understood and agreed by and between the sellers and buyers herein that the closing of this escrow is contingent upon the buyers being able to secure a new mortgage loan for part of the balance of cash payment. * * *" Defendants refused to sign because Engine Supply had not yet obtained a mortgage commitment.

Around the first week in November defendants sold the property to another buyer, Thompson International, and entered into escrow. This purchaser was brought to defendants' attention by another broker. Defendants then instructed Stewart Title to return the $1,000 deposit to Engine Supply. Thereafter, during November of 1966, Engine Supply secured the execution of formal papers for a new mortgage from The Arizona Bank, notified defendants that it now had the necessary mortgage, and served them with a lawsuit for specific performance of the "purchase contract and receipt". As a settlement of this lawsuit, and with the agreement of defendants, Engine Supply and Thompson International tossed a coin to see who would purchase the property. Thompson International won the coin toss and completed the purchase; Engine Supply ceased the litigation. Plaintiff broker, however, brought this action to recover his commission; alleging that he had produced a ready, willing and able buyer and that a resultant binding agreement had been entered into by the parties entitling him to a broker's commission.

While the facts are undisputed, the legal conclusions to be drawn thereform are not. In order to answer the single issue, whether a commission was earned, we must first determine the nature of this particular "purchase contract and receipt"; and secondly, determine the effect which defendants' sale of the property to Thompson International had on the open listing agreement with plaintiff.

As to the purchase contract and receipt, it is the general and oft-repeated rule of law, as laid down by this court in Lockett v. Drake, 43 Ariz. 357, at page 360, 31 P. 2d 499, at page 500 (1934), that:

" * * * in the absence of a specific contract to the contrary, when a real estate broker has brought together the parties to a sale or exchange of real estate, and they have agreed fully on the terms and entered into a binding contract for such sale or exchange, his duties are at an end and his commission is fully earned, and it is immaterial that the parties to the contract rescind mutually or that one or the other thereof defaults and the sale or exchange is not fully effected."

It is also the law that if a real estate broker produces a ready, willing and able purchaser according to the terms of the listing agreement, and the seller refuses to enter into a contract of sale with such purchaser, the broker is nevertheless entitled to his commission. In such case the broker has fully performed that for which he was employed and cannot be frustrated by the breach of the listing agreement by the seller.

However, such is not the case here. By the terms of the purchase contract and receipt the sale was conditioned upon the buyer obtaining a new mortgage to its satisfaction. Evidence that this condition existed is also provided in the terms of the escrow instructions which buyer attempted to get defendants to sign. The instructions, as quoted above, include the contingency that the buyer be able to secure a new mortgage loan for part of the cash balance. The principal question raised which is determinative of this case then becomes: Is a broker entitled to a commission for the sale of real property if he procures a conditional purchaser ready, able and willing to buy only in the event of the happening of a condition which never occurs?

This question was answered in the negative by this court in Diamond v. Haydis, 88

Ariz. 326, 356 P.2d 643 (1960). We stated in essence that where a broker negotiates a contract of conditional sale, he then is bound to show that the condition has occurred which converts the conditional sale into an actual sale, a binding contract between the parties. Unless and until the conditions are met there can be no binding contract and the broker cannot recover his commission. We cited Blaine v. Stinger, 79 Ariz. 376, 290 P.2d 732 (1955) as authority for this proposition. In the Blaine case the purchase contract provided that "Seller has 2 weeks to investigate Buyer's Financial Integrity. If dissatisfied, other financial arrangements are to be made. * * *." The buyer's financial integrity was unsatisfactory and the parties were never able to agree upon new financial arrangements. We held that it was a conditional contract and since it was never finally consummated the plaintiff broker was not entitled to recover his commission.

■ The case before us is an even more appropriate situation in which to apply the rule. Here the buyer, rather than the seller, conditioned the contract upon his ability to obtain a "satisfactory" mortgage. We cannot conceive of a more subjective condition; one more open to the whim of a prospective purchaser than the apparently common condition to which many realty contracts are made subject, making the sale contingent upon the buyer obtaining a satisfactory mortgage or satisfactory financing. The buyer could be offered a mortgage interest rate considerably below the prime rate and still not be "satisfied." He thus would be empowered to bind the seller and yet remain free to shop for other property and then buy from the seller or not as he might choose for practically any reason. We hold that a broker has in no way earned his commission by the presentation of such a buyer.

■ We by no means hold that a binding contract is prerequisite to a broker's commission being earned. It is elementary law that the presentation of a purchaser who is ready, able and willing to buy on the terms authorized by the seller, entitles a broker to his commission regardless of whether a contract is subsequently executed. But where, as here, a broker presents a buyer who executes a conditional contract and is willing to buy only if and when the condition is fulfilled, a commission is not earned.

■ There remains the second question: Was defendants' sale to Thompson International an effective revocation of plaintiff's agency; and if so, did that revocation occur before Engine Supply finally secured a "satisfactory" mortgage, thus fulfilling the condition? The very nature of an open listing agreement, as opposed to an exclusive listing, is that the seller is free to sell the property himself or through another broker. Where the broker's employment contract is nonexclusive, a sale of the property by the principal or through another broker without notice to him constitutes an effective revocation. Kennedy & Kennedy v. Vance, 201 Okl. 80, 202 P.2d 214 (1949); Restatement, 2d, Agency Sec. 106. In the open listing situation, the broker assumes the risk of expending his efforts against the chance that when he presents his buyer, the seller may have already revoked the agency by a sale. We therefore hold that defendants' sale of the property effectively revoked plaintiff's agency. At that point in time, Engine Supply had not yet secured its mortgage.

■ Engine Supply could have obtained a mortgage as early as October 24, 1966 but decided to shop for better interest rates. During the first week in November, Engine Supply negotiated with the Arizona Bank for a loan and formal papers were drawn up on the 8th of November. In any case the buyer did not obtain a mortgage to its satisfaction and was not presented by plaintiff broker to defendants until after defendants had sold to Thompson International, thus revoking plaintiff's agency. Having failed to present a suitable buyer before the defendants had revoked his agency by a sale of their own, plaintiff is not entitled to a broker's commission.

We have adopted the principle followed in other jurisdictions that a judgment on a motion for summary judgment may be either for or against the moving party, even though the opposing party has not filed such a motion. Markel v. Transamerica Title Insurance Company, 103 Ariz. 353, 442 P.2d 97 (1968); Carpenter v. Superior Court, 101 Ariz. 565, 422 P.2d 129 (1966). Since, therefore, the pleadings in this case indicate that there is no material dispute over the facts, and that the issues are all legal rather than factual, judgment must be for defendants since the legal issues are resolved in their favor.

The judgment of the Superior Court is vacated and the case is remanded to the Superior Court with directions to enter judgment for defendants.

LOCKWOOD, V. C. J., and STRUCKMEYER, J., concur.