471 P.2d 707

**MANAGEMENT CLEARING, INC., an Arizona corporation, Appellant,**

v.

**James R. VANCE and Frances L. Vance, husband and wife, Appellees.**

**No. 10004–PR.**

Supreme Court of Arizona,
In Banc.

July 9, 1970.

Sheldon Mitchell and A. Alexander Katz, Phoenix, for appellant.

Perry & Smith, by Ralph G. Smith, Jr., Phoenix, for appellees.

McFARLAND, Justice:

This case is before us on a request for review of the decision of the Court of Appeals, Division One. 11 Ariz.App. 390, 464 P.2d 977. The decision of the Court of Appeals is vacated.

Management Clearing, Inc., an Arizona corporation—hereinafter referred to as broker—sued James R. Vance and Frances L. Vance, his wife—hereinafter referred to as defendants—for a brokerage commission on an exclusive listing of their property with the broker for a period of three months. The listing was on a 15-unit apartment complex on East Colter in Phoenix, which was the community property of the defendants.

The broker submitted a purchase contract under the terms of the listing agreement with the exception of an additional clause which was typewritten on the printed form which stated:

"This offer is subject to an inspection and approval of the interiors."

If a real estate broker procures a purchaser ready, willing and able to pur-

chase according to the terms of the listing agreement between the broker and the seller, and the latter refuses to enter into a contract of sale with the purchaser the broker is entitled to his commission. Diamond Realty v. Haydis, 88 Ariz. 326, 356 P.2d 643.

The first question is whether an offer to buy "subject to an inspection and approval of the interiors" complies with the requirements of a ready, able and willing buyer which would entitle the broker to commission. In Diamond Realty v. Haydis, supra, the terms of the purchase contract and receipt were conditioned upon two events:

"'This acceptance is conditioned upon and *subject to* an agreement to be executed by the seller and Sam Gallant & Co. whereby Sam Gallant & Co. agree to purchase from the seller the [$18,000.00] promissory note secured by the chattel mortgage and the restrictions on the license for the sum of $15,000.00, which said note, chattel mortgage and restrictions in favor of the seller said seller agrees to transfer, sell, assign and convey to said Sam Gallant & Co. for the amount indicated above.' (Emphasis ours.)"

In deciding whether the broker was entitled to his commission under these conditions, we said:

"In determining the rights of a real estate broker to his commission, the established rule of law in this jurisdiction is that:

"'* * * in the absence of a specific contract to the contrary, when a real estate broker has brought together the parties to a sale or exchange of real estate, and they have agreed fully on the terms and entered into a binding contract for such sale or exchange, his duties are at an end and his commission is fully earned, and it is immaterial that the parties to the contract rescind mutually or that one or the other thereof defaults and the sale or exchange is not fully effected.' Lockett v. Drake, 43 Ariz. 357,

31 P.2d 499, 500; Sligh v. Watson, 69 Ariz. 373, 214 P.2d 123.

"It is also the law that if a real estate broker procures a purchaser ready, able and willing to purchase according to the terms of the listing agreement between the broker and the seller and the latter refuses to enter into a contract of sale with such purchaser, the broker is entitled to his commission. In such case the broker has fully performed that for which he was employed and cannot be frustrated by the breach of the listing agreement by the seller. However such is not the case here.

\*    \*    \*    \*    \*    \*

"The principal question raised which is determinative of this case becomes: Is a broker entitled to a commission for the sale or exchange of real property if he procures a conditional purchaser ready, able and willing to buy only in the event of the happening of a condition which never occurs?

\*    \*    \*    \*    \*    \*

"When an agreement is made subject to the consent or approval of a third party it must be viewed as a conditional agreement dependent upon such consent or approval being given. If such consent or approval is not given then such agreement is not binding upon the parties. \*    \*    \*"

In Blaine v. Stinger, 79 Ariz. 376, 290 P.2d 732, the purchaser's contract provided in part that:

"'* * * Seller has 2 weeks to investigate Buyer's Financial Integrity. If dissatisfied, other financial arrangements are to be made. Buyer to pay investigation fee, not to exceed $25.00.' This contract was signed by all the parties defendant and accepted by Kenneth G. Haydis."

In passing upon this situation, we said:

"* * * It was a conditional contract to become binding only in the event that a new financial arrangement could be agreed upon should Haydis' financial in-

tegrity prove unsatisfactory to defendants. * * *

* * * * * *

"Counsel for plaintiff argues that if defendants had approved the financial integrity of Haydis, they could have enforced specific performance of the contract by Haydis, thereby assuming that it was defendants' duty to have done so. This assumption has no basis upon which to rest. The condition, that if Haydis was unsafe as a financial risk, new financial arrangements would have to be agreed upon, was of the very essence of the contract.

* * * * * *

"It will be observed that plaintiff's cause of action as pleaded is based upon the contract between Haydis and the defendants Stingers and Polk, and the contract between Alvin M. Clark and the Stingers, hereinabove mentioned, and the refusal of the Stingers, without legal cause or just reason, to proceed with the sale to Haydis, whom the plaintiff had procured as a prospective purchaser thereof.

"Nowhere in the pleadings before the trial court did plaintiff seek to recover commission upon the sale made to the Sanguinettis based upon the ground that such sale was made during the existence of an exclusive contract between plaintiff and defendants for the sale of said property.

"The only ground upon which plaintiff could possibly have recovered is upon the theory that the sale was made to the Sanguinettis during the period when his exclusive contract to sell the property was still in existence. The pleadings with or without the proposed amendment could not justify a judgment on that theory."

In Trimmer v. Ludtke, 105 Ariz. 260, 462 P.2d 809, the defendants executed "an open listing agreement" with the plaintiff broker for the sale of their property. The broker produced a prospective buyer, and a "purchase contract and receipt" was executed by the prospective buyer. This contract and receipt provided that the property was to be "subject to new mortgage to buyers satisfaction." In passing, upon the question as to whether the broker was entitled to his commission, we said:

"This question was answered in the negative by this court in Diamond [Realty] v. Haydis, 88 Ariz. 326, 356 P.2d 643 (1960). We stated in essence that where a broker negotiates a contract of conditional sale, he then is bound to show that the condition has occurred which converts the conditional sale into an actual sale, a binding contract between the parties. Unless and until the conditions are met there can be no binding contract and the broker cannot recover his commission. We cited Blaine v. Stinger, 79 Ariz. 376, 290 P.2d 732 (1955) as authority for this proposition. In the Blaine case the purchase contract provided that 'Seller has 2 weeks to investigate Buyer's Financial Integrity. If dissatisfied, other financial arrangements are to be made. * * *' The buyer's financial integrity was unsatisfactory and the parties were never able to agree upon new financial arrangements. We held that it was a conditional contract and since it was never finally consummated the plaintiff broker was not entitled to recover his commission.

"The case before us is an even more appropriate situation in which to apply the rule. Here the buyer, rather than the seller, conditioned the contract upon his ability to obtain a 'satisfactory' mortgage. We cannot conceive of a more subjective condition; one more open to the whim of a prospective purchaser than the apparently common condition to which many realty contracts are made subject, making the sale contingent upon the buyer obtaining a satisfactory mortgage or satisfactory financing. The buyer could be offered a mortgage interest rate considerably below the prime rate and still not be 'satisfied.' He thus would be empowered to bind the seller and yet remain free to shop for other

property and then buy from the seller or not as he might choose for practically any reason. We hold that a broker has in no way earned his commission by the presentation of such a buyer."

■ The circumstances in the instant case fall within the principles of an offer presented by a broker and a prospective buyer being conditional in that it is made subject to the buyer's inspection and approval of the interiors of the apartments. The buyer, in his deposition, stated:

"Q You did want to see the interior of the apartments before the deal was final, however, didn't you?

"A Yes.

"Q That was the reason for this notation on the purchase contract and receipt, 'This offer is subject to inspection and approval of interiors,' is that correct?

"A That is correct."

Vance stated, in his deposition, regarding the prospective buyer's offer, as follows:

"Q Now, when you got this Xerox copy of this Defendants' Deposition Exhibit A in the mail from our office, at the time that you got that was still within the 90-day period, was it not, sir?

"A Now, when you looked at that—and I assume you looked at it when you got it from our office, didn't you?

"A Yes, I did.

"Q I'm asking you now whether or not the terms of that purchase contract that you got in the mail from our office were, in essence, the same terms as were contained on the listing that you had given back in August to Management Clearing?

"A I would say so, with the exception that it looked to me like I'm stuck but the buyer isn't.

"Q And what makes you say that, sir?

"A Four A. 'This offer is subject to inspection and approval of interiors.'

"And when I sign, I sign unconditionally that I'm going to part with it. This fellow could walk in a month later and say, well, I don't like the color of the kitchen and it's not approved."

The acceptance of the buyer which contained the wording "this offer is subject to inspection and approval of interiors" was a conditional acceptance, and since it was not binding upon the buyer, it did not meet the requirements necessary for a broker to recover a commission. Diamond Realty v. Haydis, supra; Blaine v. Stinger, supra; Trimmer v. Ludtke, supra.

■ The broker contends that the defendants waived the inspection and approval, and therefore the broker was entitled to recover the commission. The questions were submitted to the court upon the pleadings and the depositions of James R. Vance and the prospective buyer, John Walck. Vance testified that the representatives of the broker had called him in regard to a couple of offers sometime about the week of the 20th of October, neither of which was suitable as it was for too long a term and too tough on the buyer, in his opinion—that he told them at the time in looking it over it looked to be too harsh and that he wanted to refinance the building and make a little better deal for both a prospective buyer and himself—that it was after this that he got a call, after the 20th of October, in regard to a potential buyer. He testified as follows:

"Q And did you discuss the terms on these two or three times, or did you refuse to discuss it with them at all?

"A No. I said, the first time, "Well, I told you the last phone call you made'—Miske was on the phone that time—I said, 'I told Miss Barrett that I was going to refinance this thing and get the first mortgage back up and then we would go ahead and do something with it, but I don't want to do anything until we get the thing refinanced.'

"And Beau said, 'If that's the way you feel about it, okay.'

"Q Did you ever confirm this cancellation by letter?

"A No, I didn't.

\* \* \* \* \* \*

"Q Did you believe, sir, that if you canceled this within the three-month period, you would have incurred any responsibility to the broker for whatever work they may have done on your property?

"A No, not when they indicated it was okay with them.

"Q And who was it who indicated that to you?

"A Both Miss Barrett and Mr. Miske.

"Q And what was the nature of this indication? What did they say to you?

"A Oh, as I recall, about the last sentence was about the same from both of them: 'If that's the way you want to do it, okay.' "

He further testified that he did not see the proposed escrow instructions or a copy thereof until it was mailed by the broker's attorney. In this regard he stated:

"A I received a Xerox copy from Mr. Katz' office, of escrow instructions and purchase contract and agreement, but it was not originals; it was Xerox copies, which it had the—I immediately sent it to my attorney. And it had the wrong legal property discription [sic] on it, and a conditional deal on inspection by the prospective buyer, whom I had never met, but I've never seen any originals."

Vance testified in regard to the last proposal: "We never got into the details of it. \* \* \*" However, he testified that the Xerox copy was mailed by defendant's counsel prior to the expiration of the ninety days, and upon question by the broker's counsel he stated:

"A Four A. 'This offer is subject to inspection and approval of interiors.'

"And when I sign, I sign unconditionally that I'm going to part with it. This fellow could walk in a month later and say, well, I don't like the color of the kitchen and it's not approved."

Also, he further testified that he had never refused inspection to any one—that the broker never asked him for permission for the buyer to inspect the building; that during the time of the listing:

"A Well, every once in awhile I get a little letter from them, saying that they had shown the property to a certain party, not stating, and 'Please advise us if there has been any changes in your property.' "

There is no conflict in the evidence or the record that no request was made by the buyer or the broker for permission for the buyer to inspect the premises; that the buyer drove by the premises several times but did not ask the defendants for permission to inspect the interiors; that at no time did the defendants refuse the broker or the prospective buyer such permission.

It would have been necessary for the defendants to have refused to permit the inspection in order to create a waiver of the defense that the buyer's offer was conditional and he was not, therefore, ready, willing, and able. There was no refusal to permit an inspection. It was for the broker to find a prospective buyer ready, willing, and able to purchase the property as set forth in the listing agreement without conditions. If the broker expected to bind the defendants it would have to comply fully. It was part of its job to see that the buyer inspected the premises, or at least request permission from the defendants to inspect the premises before it can say that it has fully complied with the listing agreement. The defendants, according to the record, did not know what the conditions were until they received the proposed contract sent to them by the broker's attorneys on November 12, 1968, just before suit was brought on November 15, 1968. While the sending of the written contract which contained the condition gave the defendants notice as to what was in the contract, it cannot be said that it constituted a waiver during the 3-day period before the suit was brought.

The broker, in his Memorandum in Opposition to the Motion for Summary Judgment, contended that:

> "Seller, by his conduct has waived the condition concerning inspection and is estopped from claiming a variance in the terms."

However, there was no question of fact for the trial court because the clause was a condition of the *buyer* which was inserted by the broker on behalf of the buyer. This condition the seller could not waive, which distinguishes this case from those cited in the broker's brief in regard to conditions the seller could waive and thereby make a binding contract. The defendants could not make a binding contract which they could enforce by accepting the buyer's conditional offer. Furthermore, in the instant case, there was no request to make an inspection nor did the seller refuse to permit an inspection.

In view of our holding that the instant case must be reversed on these grounds, it is unnecessary for this Court to pass on the question of the authority of the husband to bind the community, by his signature alone, under the facts of this case.

The decision of the Court of Appeals is vacated, and the Order of the Superior Court granting defendant's Motion for Summary Judgment is affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and HAYS, JJ., concur.