**W. W. CHAMBERS, INC., Appellant,**

v.

**E. A. AUDETTE, t/a Audette Realty Co., and Henry Seay, Appellees.**

**No. 11193.**

District of Columbia Court of Appeals.

Argued Jan. 26, 1978.

Decided March 29, 1978.

---

**12**

A. Slater Clark, Bethesda, for appellant.

Harry L. Ryan, Jr., Washington, D. C., for appellees.

Before NEBEKER and FERREN, Associate Judges, and BACON, Associate Judge, Superior Court of the District of Columbia.*

FERREN, Associate Judge:

Appellees, E. A. Audette and Henry Seay, brought suit against appellant, W. W. Chambers, Inc., for a brokerage commission allegedly due for obtaining a ready, willing, and able purchaser for Chambers' property. After a jury verdict, the trial court entered judgment in favor of the broker-appellees for $18,500. Appellant seeks to set aside the verdict essentially on the ground that the trial court erroneously instructed the jury to disregard the fact that Chambers, as owner, already had sold the property by the time that Messrs. Audette and Seay, brokers, came forward with a buyer and claimed the commission.

Under the circumstances, we affirm the judgment. This case does not concern the usual broker-seller relationship where prior sale of the property might be determinative. In any event, appellant did not give the trial court an adequate basis for instructing the jury on the legal theory advanced on appeal. Thus, perceiving no miscarriage of justice on the record here, we are obliged to leave the judgment undisturbed.

I.

By letter of July 25, 1972, W. W. Chambers, president of W. W. Chambers, Inc., which conducts a funeral business, authorized Henry Seay, a licensed real estate broker, to offer for sale the company's real property located at 3072 M Street, N. W. More specifically, Mr. Chambers entered into a nonexclusive listing arrangement, apprising Mr. Seay that the company would "consider a contract" for $375,000. The parties thereby created the normal brokerage agreement under which the prospective buyer is to make the offer, subject to acceptance by the seller.

Almost a year later, in June, 1973, Ralph Borden, a salesman for E. A. Audette, a real estate broker associated with Mr. Seay, showed the property to Zweites Deutsches Fernsehen (ZDF), a German television corporation. On June 14, Werner Schaefer, a local operations manager for ZDF, sent a letter to Mr. Borden expressing interest in the property. Mr. Borden informed Mr. Chambers of ZDF's interest.

On June 22, 1973, Mr. Chambers wrote a letter to Mr. Borden offering the property to ZDF either for $375,000 in cash or for $360,000 payable over five years at 7½% interest, provided that acceptance by either mode of payment was forthcoming by July 5, 1973.[1]

Unbeknownst to Messrs. Borden, Audette, or Seay, the Chambers company had previously contracted, on June 18, 1973, for

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

1. The June 22, 1973, letter read as follows:
   RE: Property—3072 M Street, N. W.
   Dear Mr. Borden:
   I have reviewed with interest the letter from Mr. Werner Schaefer, Operations Manager, West German Television 2, Washington, D.C., re the above property.
   I will make available the purchase under the following terms:
   1. Cash sale price: $375,000.00.

2. Time purchase price: $360,000.00—$100.000.00 at date of conveyance. We will hold a $260,000.00 first trust to be paid interest only, payable quarterly at the rate of seven and one-half per cent per annum (7½%). Principal to be due and payable in full five years (5) from date of settlement.

3. Acceptance of one of the above terms by not later than July 5, 1973.
      Very truly yours,
      W. W. Chambers
      President

sale of the very same property to National Savings and Trust (NS&T). That contract was conditional, however, upon certain feasibility studies and approvals.

On July 5, 1973, Mr. Schaefer sent an acceptance on behalf of ZDF to Mr. Chambers both by telegram and by hand-delivered letter.[2] Thereafter, Mr. Chambers informed ZDF that his company no longer could sell the property because it already had been sold to another party. (NS&T had decided to accept the conditional contract of June 18 and had communicated its firm acceptance on July 2, 1973.)

ZDF sued W. W. Chambers, Inc., for specific performance. During the pendency of that action, however, ZDF acquired the property for $400,000 in settlement of litigation over the property against NS&T. ZDF accordingly modified its claim against the Chambers company to one for damages. The trial judge in the ZDF–Chambers litigation could find no effective acceptance of the Chambers offer in ZDF's July 5 letter and telegram. Accordingly, finding no contract of sale, he entered judgment for defendant W. W. Chambers, Inc.

In September, 1973, Messrs. Audette and Seay commenced the present action against W. W. Chambers, Inc. for the brokerage commission allegedly due for procurement of ZDF.[3] The jury returned a verdict for plaintiffs, finding defendant liable for $18,-500. Defendant W. W. Chambers, Inc., has appealed.

## II.

Although appellant has raised a number of contentions on appeal, only one merits extended discussion.[4] Appellant

---

**2.** In relevant part, Mr. Schaefer's letter of July 5, 1973, read as follows:

> RE: Property—3072 M Street
>
> Dear Mr. Chambers:
>
> Responding to your letter of June 22, 1973, addressed to Audett [sic] Realty, attention Mr. Ralph Borden, we, ZDF—a German Television, are pleased to exercise the option which you extended to us to purchase the above property. We will accept your terms: Cash sale price: $375,000. Since another of your terms was acceptance by not later than today's date, you may consider this letter as our fulfillment of your time requirement.
>
> \* \* \* \* \* \*
>
> There is only one thing in this transaction which gives us some hesitancy. We have no intention of modifying or remodeling the property. We like its design and feeling and will be pleased to have it remain as it is. However, we naturally will require some interior rearrangement, etc. to suit our own requirements and hopefully assume the Zoning and Fine Arts Commissions, and more particularly the Georgetown Fine Arts Commission, will extend all necessary approvals.
>
> Sincerely,
>
> Werner Schaefer
>
> Operations Manager

**3.** W. W. Chambers initially was named individually as a defendant; he later was dismissed from the suit.

**4.** Appellant Chambers' additional arguments are: (1) *the June 22, 1973, letter from Chambers modified the principal-agent relationship, with the result that the broker's duty became obtainment of an acceptance and not merely a*

*ready, willing and able buyer. ZDF's letter did not contain the required acceptance.* We agree with appellant that the June 22 letter contained an "offer," and that ZDF had to accept that offer unconditionally to become a ready, willing, and able buyer entitling the broker-appellees to a commission. The jury, however, was properly instructed as to the elements of acceptance; the ready, willing, and able purchaser requirement; and the necessity that ZDF's July 5 letter be an actual acceptance. The jury found that there was an acceptance by ZDF, and the evidence was more than adequate to sustain that finding. *See* text at Part III, *infra.* (2) *Appellees did not prove that ZDF was a "financially able" buyer.* Although we doubt that the burden of proving the prospective buyer's financial ability ought to be placed upon a plaintiff-broker, particularly when objections to or questions about solvency are not raised by the seller at the time that the prospective buyer is proffered, *see Dotson v. Milliken,* 27 D.C. App. 500, 515–16, *aff'd,* 209 U.S. 237, 28 S.Ct. 489, 52 L.Ed. 768 (1906), the trial court did put the burden on the plaintiff-appellees in this case; and the evidence sufficiently supports the jury finding. (3) *By virtue of collateral estoppel, the determination by the trial court in the previous ZDF v. Chambers litigation that ZDF had not delivered a firm acceptance of the Chambers offer should have been binding on plaintiff-appellees here.* To be collaterally estopped, one must have been a party, or in privity with a party, to the earlier suit purported to bar the present litigation. *Williamson v. Bethlehem Steel Corp.,* 468 F.2d 1201, 1203–04 (2d Cir. 1972); *McVeigh v. McGurren,* 117 F.2d 672, 678 (7th Cir. 1941); 1B Moore's Federal Practice ¶ 0.411[1] at 1251 (2d ed. 1974). One

Chambers asserts that the July 2 sale of the property to NS&T was an effective termination of its brokerage arrangement with appellees, Audette and Seay, and thus negated the possibility that these brokers could accomplish a sale to ZDF and earn the promised commission. A background discussion of the law applicable to such commission arrangements is therefore required in order to test appellant's argument.

■ In general, when a seller executes a listing agreement authorizing a broker to make property available for sale on specified terms, the broker accomplishes the task and earns the commission when he or she procures a purchaser ready, willing, and able to buy on those terms. *Sorivi v. Baldi*, D.C.Mun.App., 48 A.2d 462 (1946); *Trimmer v. Ludtke*, 105 Ariz. 260, 462 P.2d 809 (1969); *Dindo v. Cappelletti*, 116 Vt. 403, 77 A.2d 840 (1951); *Romine v. Greene*, 13 N.J. Super. 261, 80 A.2d 458 (1951); *Walsh v. Grant*, 256 Mass. 555, 152 N.E. 884 (1926). Once a broker's authority is effectively terminated, however, by express revocation or otherwise, the ability to earn a commission by compliance with the terms of the listing agreement disappears. Thus, the right to a commission depends upon accomplishment of the task before the authority to do so ends. *Walsh v. Grant, supra.*

■ Commonly, a broker-seller relationship is terminable by sale of the property directly by the owner or by another broker. Upon such a sale, the determination of "[w]hether or not [the broker-agent's] authority ceases without notice to him, depends upon the previous or contemporary manifestations of the principal. . . ." Restatement of Agency, Second § 106, Comment c (1958). Ordinarily, absent "evidence to the contrary, it is inferred that the agent's authority does not terminate until the agent has notice of the accomplishment of the result." *Id.* Such evidence to the "contrary," if any, will be found in the nature of the relationship and all other "manifestations of the principal to the agent." Restatement of Agency, Second, *supra* § 106.

■ If the agency relationship is general in character (*i. e.*, open-ended, extending to sequential or multiple transactions) and/or runs exclusively to one broker, such characteristics manifest an understanding that notice is required for effective termination of commission rights. *Bonn v. Summers*, 249 N.C. 357, 106 S.E.2d 470 (1959); *Dindo v. Cappelletti, supra*; Restatement of Agency, Second, *supra*. On the other hand, it is widely acknowledged that absent evidence to the contrary, if the agency is nonexclusive and is confined to one transaction, that relationship is terminable, and is in fact terminated, upon sale of the property by the owner or another broker *without notice.*[5] *Trimmer v. Ludtke, supra; Dindo*

---

who was not a party will be deemed the equivalent of one (and thus subject to collateral estoppel) only if he or she had a sufficient interest *and* participation in the earlier litigation. Moore's *supra* at ¶ 0.411[6] at 1551 *et seq.* Moreover, he or she must be shown to have exerted a degree of control over the conduct of the prior suit. *American Safety Flight Systems, Inc. v. Garrett Corp.*, 528 F.2d 288, 289 (9th Cir. 1975); *Brown v. First Ins. Co. of Hawaii*, 295 F.Supp. 164, 168 (D.Ore.1968); Moore's, *supra* at ¶ 0.411[6] at 1564–67. We find it inappropriate to extend collateral estoppel to the present situation—to deprive appellees, Audette and Seay, of their day in court merely because Mr. Audette's salesman, Mr. Borden, attended the previous litigation as a witness on ZDF's behalf. This falls short of the degree of control necessary to charge appellees as parties to the ZDF–Chambers litigation. *See District of Columbia v. Ray*, D.C. App., 305 A.2d 531 (1973) (collateral estoppel is

a limited exception to entitlement to a day in court); Moore's *supra* at ¶ 0.411 at 1252 (day in court rationale underlies party or privy requirement). (4) *The outcome of the prior litigation should have been admitted as evidence in any event.* Absent satisfaction of the criteria for collateral estoppel, we agree with the trial court that the previous suit's result was irrelevant and thus inadmissible.

5. This general rule of revocability by sale without out notice is subject to a good faith limitation. Sellers cannot effectively revoke an agency with the very purpose of defeating a broker's impending commission. *Wood v. Hutchinson Coal Co.*, 85 F.Supp. 1010 (N.D.W.Va.1949); *Kennedy and Kennedy v. Vance, supra; Walsh v. Grant, supra.* This is not the situation presented by the facts here. The exception is not applicable.

*v. Cappelletti, supra; Kennedy and Kennedy v. Vance,* 201 Okl. 80, 202 P.2d 214 (1949); *Walsh v. Grant, supra; Hunt v. Judd,* 225 Ill.App. 395 (1922); *Hennings v. Parsons,* 108 Va. 1, 61 S.E. 866 (1908); Restatement of Agency, Second, *supra.*[6] "In the open listing situation, the broker assumes the risk of expending his efforts against the chance that when he presents his buyer, the seller may have already revoked the agency by a sale." *Trimmer v. Ludtke, supra,* 462 P.2d at 811.

Given this doctrinal framework, we turn to the facts of this case.

## III.

■■■■ It would appear that the initial, open listing brokerage arrangement between the appellant and appellees fits neatly within the nonexclusive, limited-agency category of the *Trimmer v. Ludtke, supra,* line of cases. Ordinarily it would follow, as appellant contends, that the arrangement was terminated (and the right to a commission extinguished) by the July 2 sale to NS&T, despite appellees' ignorance of that sale. On close examination, however, we find that in the other "manifestations of the principal" there is evidence of an intent contrary to that ordinarily inferred in the case of a nonexclusive, limited agency.

When Mr. Chambers notified Audette's salesman, Mr. Borden, on June 22 that the Chambers company would "make available the purchase" to ZDF for $375,000 in cash or $360,000 over time if accepted by July 5, 1973, the company thereby changed the terms of the original brokerage agreement wherein Chambers, as was customary, had merely authorized solicitation of offers which Chambers reserved the right to accept. Appellant Chambers, in fact, itself points out (*see* note 1, *supra*) that in the June 22, 1973, letter, Chambers reversed the normal contractual sequence by extending a specific *offer* to ZDF.

The trial judge essentially based his instructions to the jury on this premise. He thus instructed the jury to focus on the question whether ZDF had been a ready, willing, and able buyer that unconditionally accepted the Chambers offer; if so, appellees satisfied their brokerage duties and as a result, were entitled to a commission. He further instructed, consistent with this premise (and in the absence of any evidence of notice), that the prior sale to NS&T was of no consequence to the determination of Chambers' liability for the brokerage commission.

Prior to submission of the case to the jury, during the colloquy over proposed instructions, appellant's counsel objected to this latter instruction, essentially arguing that it was surplusage detracting from the critical question whether ZDF's acceptance had been unconditional. He did *not,* however, specifically argue to the trial court that the instruction was invalid on the ground that the prior sale could have revoked the agency without notice. He did not even allude to the revocation issue, let alone ask that the jury be instructed to determine whether the Chambers company, in its June 22 letter (or otherwise), did—or did not—manifest an intention that termination of the agency, and thus revocation of commission rights, would depend on notice of any prior sale.

Had appellant not only objected to the court's instruction about the irrelevance of the prior sale but also requested an instruction on the revocation issue—including the impact of the prior sale, without notice, on appellant's commission rights—the court might have been obliged to submit that issue to the jury. Absent such a request however, we are left to evaluate whether failure to give such an instruction amounted to a "miscarriage of justice." *See* Super. Ct.Civ.R. 51; *Bullock v. Young,* D.C.Mun. App., 118 A.2d 917 (1955); *Barnes v. Wheeler, Inc.,* D.C.Mun.App., 55 A.2d 83 (1947);

---

**6.** *But see Romine v. Greene, supra* (notice is required *unless* there is no reasonable opportunity for notice between the time of sale and the

subsequent broker's proffer of a ready, willing, and able purchaser).

5A Moore's Federal Practice ¶ 51.04, at 2507–08 (2d ed. 1977).[7]

In making that evaluation, we focus primarily on the June 22 modification of the brokerage agreement specifically offering the property to ZDF through appellee Audette (implying an exclusive brokerage arrangement), coupled with the rule of construction that unless there is evidence to the contrary, it is proper to infer that notice of a prior sale is required for termination of the broker's authority. *See* Restatement of Agency, Second, *supra.* In our view, the record fully supports a conclusion that such prior notice was required. Thus, we cannot discern the miscarriage of justice necessary to hold the trial court's instructions erroneous, absent a specific, relevant objection.

We affirm the judgment of the trial court.

*Affirmed.*

7. Super.Ct.Civ.R. 51 provides, in part, as follows: "No party may assign as error the giving [of] or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."