630 P.2d 49

**NATIONWIDE RESOURCES CORPORATION, an Arizona corporation, Plaintiff/Appellee,**

v.

**King F. NGAI and Sue F. W. Ngai, individually and as husband and wife, Defendants/Appellants.**

**NATIONWIDE RESOURCES CORPORATION, an Arizona corporation, Third-Party Plaintiff/Appellee,**

and

**Denton Real Estate Company, an Arizona corporation; Bill Czech and Karin-Ann Czech, husband and wife; Carl L. Swart and Lova Swart, husband and wife; George M. Mott and Lois Mott, husband and wife; and W. L. Mott and Hula Mott, husband and wife, Third-Party Defendants/Appellees,**

v.

**King F. NGAI and Sue F. Ngai, individually and as husband and wife, Defendants/Appellants.**

No. 2 CA–CIV 3686.

Court of Appeals of Arizona, Division 2.

April 14, 1981.

Rehearings Denied May 20, 1981.

Review Denied June 16, 1981.

Rubin & Myers by Scott E. Myers, Tucson, for plaintiff/appellee.

David A. Hays, Tucson, for defendants/appellants.

S. Jeffrey Minker, Tucson, for third-party defendants/appellees Denton, Czech and Swart.

Walter W. Hochuli, Tucson, for third-party defendants/appellees Mott.

## OPINION

BIRDSALL, Judge.

This appeal is from part of two separate superior court judgments in one case.

Appellants, King F. Ngai and Sue F. Ngai, husband and wife, were named as defendants in a complaint filed by appellee, Nationwide Resources Corporation (Nationwide) seeking a real estate commission. Appellants had listed a property in Tucson for sale with Nationwide, a licensed real estate broker. As a result of Nationwide's efforts a California buyer executed a deposit receipt and agreement in which he agreed to purchase the property at the listed price and upon appellants' terms. The written agreement was subject to the following conditions:

"Subject to there being no easements on title of subject property and buyer's approval of a termite inspection on said property.

Subject to the preparation and acceptance of both buyer and seller of a more detailed agreement relating to the sale of the subject property.

Subject to Preliminary Title Report—terms acceptable to buyers."

Closing was scheduled for June 30, 1978 at the title company. The purchaser came to the closing with $60,900 in cashier's checks to make the payments required at the time. All other necessary persons were present except appellants. The escrow agent (title company) was prepared with all necessary documents and information to close. A more detailed agreement relating to the sale had not, however, been prepared. We will return to this subject in discussing the issues. Appellants never appeared and the closing did not occur. Appellants' only reason given was that Nationwide's salesman told them not to come. The salesman denied this and the fact that he was present himself lends credence to this denial. The trial court apparently found Nationwide had produced a buyer ready, willing and able to purchase and entered judgment against appellants for the commission. One part of this appeal is from that judgment.

Since it is less complicated to consider this part of the appeal before a discussion of the other, we will first consider the issues between appellants and Nationwide pertaining to the complaint and the judgment thereon.

The issue between these parties is whether a real estate broker who has produced a buyer who is ready, willing and able to perform on the sellers' terms is entitled to the commission when the sale does not close because of the sellers' non-performance. The trial court found for the broker and we agree. We will consider the evidence in the light most favorable to support the trial court.

"... [I]n absence of specific contract to contrary, when a real estate broker has brought together parties to a sale or exchange of real estate, and they have agreed fully on the terms and entered into a binding contract for such sale or exchange, his duties are at an end and his commission is fully earned, and it is immaterial that the parties to the contract rescind mutually or that one or the other thereof defaults and the sale or exchange is not fully effected". *Lockett v. Drake*, 43 Ariz. 357, 360, 31 P.2d 499, 500 (1934).

Later Arizona cases have applied this law and it is controlling here if the fact that the deposit receipt and agreement is to some extent conditional does not preclude its application.

■ A broker is not entitled to his commission when the contract to purchase is conditioned upon the happening of an event which may never occur. Thus in *Management Clearing, Inc. v. Vance*, 106 Ariz. 95, 471 P.2d 707 (1970) the broker could not recover where the prospective buyer's offer was subject to an inspection and approval of the interiors. And in *Trimmer v. Ludtke*, 105 Ariz. 260, 462 P.2d 809 (1969) the same result was reached when the purchase document provided that the property was to be subject to a new mortgage to buyer's satisfaction. *See also Diamond v. Haydis*, 88 Ariz. 326, 356 P.2d 643 (1960); *Blaine v. Stinger*, 79 Ariz. 376, 290 P.2d 732 (1955).

We are impressed that in each of these cases and others which we do not cite that the conditions were of great importance to either the buyer or seller and went to either the ability of one of the parties to go forward and complete the transaction or the desirability of completing it. Thus in *Trimmer* the buyer wanted a new mortgage on the property before he would purchase; in *Blaine* the seller did in fact investigate the buyer's financial ability and was dissatisfied and in *Management Clearing, Inc.* the "interiors" of the property, a 15 unit apartment complex, could have made the property either more or less desirable to the buyer.

Examining the conditions in the deposit receipt and agreement in the case subjudice we find they are actually three in number and the parties so agreed in the pretrial statement.

We will first consider the title matters. These provisions are quite standard.

■ The deposit receipt and agreement provides in the printed form that the sale is subject to marketable title as evidenced by standard Owner's Title Insurance policy. The conditions "subject to there being no

easements on title" and "subject to Preliminary Title Report—terms acceptable to buyer" actually do nothing more than emphasize that the seller's title must be merchantable. These provisions are not like the conditions in the cases we have cited. A broker is entitled to his commission even though the transaction is not consummated because of a defect in the seller's title or even a total absence of title. *Diamond v. Chiate*, 81 Ariz. 86, 300 P.2d 583 (1956); *Bradley v. Westerfield*, 1 Ariz.App. 319, 402 P.2d 577 (1965).

There is nothing in the record to even suggest that there was any title problem. Although no preliminary title report was placed in evidence we find a charge for title insurance on the escrow closing statements which were prepared and we note the other documents necessary for closing, to-wit: vendee's deed with complete legal description subject only to an agreement of record which is the same contact described in the deposit receipt and agreement, bill of sale for personal property, note for balance of purchase price to be secured by deed of trust, affidavit of real property value, the deed of trust, assignment, supplemental escrow instructions and closing statements.

■ We find that the conditions regarding title do not affect the appellee's right to its commission.

The second condition for a termite inspection likewise appears to be of no real concern to the parties and we note a charge on the appellants' escrow statement of $15.00 to John's Termite Co. which indicates compliance.

■ The third condition concerning the preparation and acceptance of both buyer and seller of a more detailed agreement relating to the sale of the subject property, if given a literal interpretation seems to be a requirement that there be a new sales agreement. If the parties actually intended that a new written agreement be prepared and executed, the terms of which were still subject to their mutual agreement then the deposit receipt and agreement would not constitute the "binding contract" required

in *Lockett v. Drake*, supra. An agreement to make an agreement binds no one. *See Burkett v. Morales*, 128 Ariz. 417, 626 P.2d 147 (1981). There is nothing in the record to even suggest what the parties intended by this provision. In the pretrial statement the parties agree all three conditions were for the "purchaser's protection". Since the purchaser came from California to Tucson with $60,900 in certified funds for closing we believe the trial court must have found that the buyer waived this condition and was a ready, willing and able purchaser. The evidence supports such a finding.

■ Appellant attempts to raise other issues which either have no merit or are not supported by adequate authority and some of which are affirmative defenses which were not plead or argued in the trial court.

For example, there was an underlying contract obligation on the property which the buyer would be obligated to pay under the terms of the agreement. The appellants were to give a deed of trust subject to this obligation. The buyer would have preferred that the contract (an obligation to a third person) be transformed into a mortgage. The salesman approached the third person with this request but it was refused and the deed of trust was prepared for the closing. The buyer was bound to accept the deed subject to the contract. Appellants claim the buyer would not do this. The evidence does not support them in this regard.

Appellants next argue that there was a mutual mistake with regard to whether a deed of trust could be placed "on top" of a contract, even though this was provided for in the deposit receipt and agreement. The record supports no such mistake, only confusion on the part of appellants' attorney.

Appellants further argue that this requirement for a deed of trust with an underlying contract obligation makes performance of the agreement impossible. There is no authority cited for this unique proposition and we will not consider it.

Appellant's next argument is that there was no good and sufficient consideration.

Although acknowledging that the consideration to support a written agreement need not be monetary, appellants argue that the buyer had not put up any earnest money. The buyer gave a promissory note payable on closing. The funds he had available at closing would have paid this note as well as his other obligations. Appellants signed and approved the agreement. The buyer's promises alone constituted consideration.

Lastly, appellants argue that appellee breached fiduciary duties. This argument is founded on appellants' assertion that the salesman told them not to attend the closing. Without discussing whether this rises to fiduciary duty we find that the evidence on this issue was in serious conflict. We accept that evidence supporting the judgment that appellants were not told to stay away. The evidence further supports a finding that appellants by the act of staying away did in fact refuse to complete the transaction. The broker's right to compensation otherwise earned is not defeated by his principal's refusal to honor the sales agreement. *Bass Investment Co. v. Banner Realty, Inc.*, 103 Ariz. 75, 436 P.2d 894 (1968).

■ We affirm the judgment in favor of appellee Nationwide and against appellants Ngai. We now turn to the other appeal which concerns the additional appellees who are before us.

Appellants Ngai filed a permissive counterclaim in which they alleged that Nationwide had misrepresented the size of a lot which they had purchased in an unrelated transaction to their damage in the amount of $10,000. The claim was proper under Rule 13(b), 16 A.R.S. Rules of Civil Procedure.[1]

The lot was sold to appellants by appellees Mott. They listed the property for sale with appellee Denton, a licensed real estate broker. Appellee Carl L. Swart was the salesman of Denton personally involved in that sale and appellee Bill Czech was a broker with Denton who also participated.

Nationwide, through multiple listing, actually consummated the sale from the Motts to appellants.

Upon being served with the counterclaim Nationwide filed a third-party complaint against appellees Mott, Denton, Czech and Swart alleging, inter alia, that if it was found to be liable to appellants third-party defendants would be liable to it for the entire amount of any such damage award.

Third-party defendants were required to retain counsel and defend.

After discovery was completed, the counterclaim defendant, Nationwide, and third-party defendants, all the other appellees, filed motions for summary judgment.

Appellants at that point abandoned their counterclaim. They filed no opposition to the motions and did not even appear at the time finally set for hearing, even though given a second chance by the trial court. The motions were all granted, the court finding that there were no genuine issues as to any material fact and that the moving parties were entitled to judgments as a matter of law, and the third party complaint was therefore moot. The court further entered separate judgments against appellants in favor of Nationwide, in favor of the Motts and lastly in favor of Denton, the Czechs and Swarts for their respective attorney's fees and costs.

Appellants have appealed from the judgments awarding attorney's fees. In their opening brief they present the following questions:

1) Whether the lower court erred in awarding attorney's fees and costs against Ngais and in favor of the Third Party Defendants, and

2) Whether the court erred in granting summary judgment to Nationwide. We decline to consider the second question since appellants did not appeal from the summary judgment on the counterclaim.

1. *Permissive counterclaims.* A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

On the first question appellants' sole argument is that the award of attorney's fees is error for the reason that appellants and the third-party defendants (appellees Mott, Denton, Swart and Czech) were not in an adversary relationship.

In their answering brief these appellees raise a question which was before the trial court and decided in their favor. They argue that they were entitled to attorney's fees pursuant to A.R.S. § 12–341.01[2] because they claim the permissive counterclaim and resulting third-party complaint arose out of a contract. In addition they argue that they were entitled to attorney's fees pursuant to subparagraph C of A.R.S. § 12–341.01 because there was clear and convincing evidence that the permissive counterclaim against Nationwide constituted harassment, was groundless and not made in good faith. Consequently, in their reply brief appellants responded to these arguments and we find that they are properly before us on appeal.

The permissive counterclaim was a claim sounding in negligence and not in contract. The conduct giving rise to the claim was a misrepresentation of the size of the lot sold and purchased. Appellees are not entitled to attorney's fees under subparagraph A of the statute. *See Circle K Corporation v. Rosenthal*, 118 Ariz. 63, 574 P.2d 856 (App. 1978); *Amphitheater Public Schools v. Eastman*, 117 Ariz. 559, 574 P.2d 47 (App. 1977).

Therefore, in order to award attorney's fees the trial court must have found clear and convincing evidence that the counterclaim constituted harassment, was groundless and was not made in good faith.

We find there was sufficient evidence to support such a finding. This evidence is found in the depositions and other discovery undertaken prior to the summary judgment and was presented to the court in support of that motion. The deposition of Mrs. Ngai showed that she inspected the property they were purchasing, a laundromat which occupied the entire width of the lot, being "sandwiched" between two other buildings. She had never, to the date of the deposition, measured the width of the property. She understood that the width shown on the multiple listing was an approximation only. She stated that if the original lawsuit by Nationwide had not been filed she would never have filed the claim. Likewise Mr. Ngai, when deposed, said he had never measured the lot and that he did not know anything about the property or its size when they purchased it. Neither appellant knew to what extent they were damaged and their attorney had suggested the figure of $10,000.[3]

Appellants argue that since the judgment for attorney's fees was in favor of third party defendants it could not be entered against them since they did not directly bring third-party defendants into the lawsuit. This issue thus becomes: Under the statute permitting the court to award attorney's fees, may third-party defendants recover attorney's fees from a party other than the third-party plaintiff? Appellants cite no authority other than A.R.S. § 12–341.01.

2. A. In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees. This section shall in no manner be construed as altering, prohibiting or restricting present or future contracts or statutes that may provide for attorney's fees.

B. The award of reasonable attorney's fees awarded pursuant to subsection A should be made to mitigate the burden of the expense of litigation to establish a just claim or a just defense. It need not equal or relate to the attorney's fees actually paid or contracted, but such award may not exceed the amount paid or agreed to be paid.

C. Reasonable attorney's fees shall be awarded by the court in any contested action upon clear and convincing evidence that the claim or defense constitutes harassment, is groundless and not made in good faith. In making such award, the court may consider such evidence as it deems appropriate and shall receive this evidence during trial on the merits of the cause, or separately, regarding the amount of such fees as it deems in the best interest of the litigating parties.

3. This amount, coincidentally, approximates Nationwide's commission in the principal case.

This is a question of first impression in Arizona. Appellants argue that as to them third-party defendants were not successful parties. Since their counterclaim was filed against Nationwide only and Nationwide filed the third-party complaint and brought third-party defendants into the case, appellants are not responsible for the expenses of litigation incurred by Denton, et al. Appellants argue that the third-party defendants were not "adverse" to them. However, the liability of third-party defendants, if any, would result only if appellants were successful in their claim against Nationwide. Therefore, third-party defendants had every reason to defend against appellants. The third-party complaint against them became moot only because Nationwide prevailed on appellant's counterclaim.

■ The statute, A.R.S. § 12–341.01, does not use the term "adverse party" although the term "adversary" is used in A.R.S. § 12–341 governing recovery of costs and the term "adverse party" is used in A.R.S. § 12–342 providing for costs on appeal. We agree with appellants that in order for a party to recover attorney's fees under the statute from another, it is necessary that the parties be adverse. However, the determination of which parties are adverse to others is not made solely from their alignment in the pleadings. *See Young v. Metropolitan Dade County*, 201 So.2d 594 (Fla. App.1967) (discusses meaning of adverse party in context of adverse witness). In *Harvey v. Lewis*, 10 Mich.App. 23, 158 N.W.2d 809 (1968), the court had to determine whether a judge who had been challenged in a disqualification proceeding and had employed counsel to represent him as a respondent was adverse to the party seeking his disqualification. In holding that he was an adverse party, the Michigan Court of Appeals said: "The word 'adverse' in legal proceedings has been said to be equivalent to or synonymous with 'opposed' and 'opposite'". 158 N.W.2d at 812. In their counterclaim appellants alleged misrepresentation by Nationwide. Nationwide was acting as an agent for appellees Mott. Ap-

pellee Denton was also their agent and appellees Czechs and Swarts were employees of Denton. These appellees, as well as Nationwide, were opposed to any proof that a misrepresentation had been made and they were opposed to any relief being granted based upon such misrepresentation. Their position was completely opposite to that of appellants'.

Rule 14(a), 16 A.R.S. Rules of Civil Procedure, by virtue of which Nationwide filed their third-party complaint and brought in the third-party defendants provides, inter alia, that a defendant, as a third-party plaintiff, may file a complaint against a person not a party to the action who is or may be iiable to him for all or part of the plaintiff's claim against him.[4] The rule further provides that the third-party defendant may assert against the plaintiff (appellants here) any defenses which the third-party plaintiff (Nationwide) has to the plaintiff's claim and may also assert any claim it has against the plaintiff (appellants) arising out of the transaction.

The rules involving third-party practice clearly recognize that third-party defendants are in an adverse position to the party asserting a claim for which they may be ultimately responsible.

We hold that under the facts of this case third-party defendants were adverse to the counterclaim plaintiff and that the judgment for attorney's fees in their favor and against appellants was proper.

Appellee Nationwide is entitled to attorney's fees on appeal from the judgment in its favor on the original complaint and we fix the amount thereof at $750 in favor of Nationwide and against the Ngais. The other appellees are not entitled to attorney's fees on appeal. All appellees are entitled to their costs on appeal.

Affirmed.

HATHAWAY, C. J., and HOWARD, J., concur.

---

**4.** In this case the claim stated by appellants in the permissive counterclaim.