## No. 10,182.

### HODGIN, ET AL. v. PALMER, ET AL.

Decided December 4, 1922.

Action by real estate brokers for commission. Judgment for defendants.

### Affirmed.

1. BROKERS—*Real Estate—Commission—Pleading.* A complaint for a real estate broker's commission fails to state a cause of action where it does not appear therein, that plaintiff had procured a purchaser able, ready and willing to buy upon the owner's terms; or that it was probable that he could or would, within a reasonable time, have effected a sale had the defendant not interfered.

2. *Real Estate Broker—Collusion of Owner and Purchaser to Avoid Commission.* Evidence reviewed, and the contention that there was collusion between the owner and purchaser of real estate to prevent the broker from getting a commission, overruled.

3.    *Real Estate Broker—Sale by Owner.* Where the agency of a
real estate broker is not exclusive, the owner may sell upon the
same terms given the broker, and to a purchaser to whom the
broker was unable to sell through no fault of the owner, and
in such circumstances there is no liability for a commission.

4.    INSTRUCTIONS—*Requested.* Requested instructions are properly re-
fused, where there is no evidence in the record making them
applicable, or where they are fully covered by the instructions
given by the court.

5.    BROKERS—*Real Estate—Commission.* A real estate broker is not
entitled to a commission for a sale, where he never succeeded
in bringing the minds of the buyer and seller to an agreement
on price and terms authorized by the owner, and where there
is no proof that he probably could or would have succeeded
within a reasonable time, in doing so.

*Error to the District Court of Fremont County, Hon. James
L. Cooper, Judge.*

.   Mr. A. L. JEFFREY, Mr. EDWARD H. STINEMEYER, for
plaintiffs in error.

Mr. D. W. ROSS, for defendants in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

FEBRUARY 3, 1920, the defendants Palmer constituted
Hodgin & Sharman their agents to sell a house in Canon
City at the price of $4500 for a commission of $200. The
agency created was not exclusive, and on the written con-
tract, evidencing the agreement, was a statement that de-
fendants had appointed another agent. Later defendants
informed plaintiffs that a third agent had been appointed.
Plaintiffs recognized, by their correspondence, that their
agency was not exclusive, and expressed regret that de-
fendants had placed the property for sale with other
agents, and made a request that they should be appointed
exclusive agents for thirty days, but the defendants de-
clined it.

The complaint alleges that after they had been appointed

agents, plaintiffs advertised the premises for sale; but it was not until October 6, 1920, that they notified defendants that they had procured prospective purchasers and gave to the defendants the names of two parties, each of whom made an offer for the property, but it was for a less amount than the stipulated price, and defendants rejected the offer.

Thereafter, and in reply to plaintiffs' letter as to these two offers, which were several hundred dollars less than the first list price, the defendants wrote to the plaintiffs that they would accept $4025 net for the property. In reply to this letter, making the reduction in price, plaintiffs wrote to defendants that one of the parties who had previously submitted an offer, made another offer of $4,000 cash for the property. Plaintiffs also said that out of this amount their commission of $200 would have to be paid, and then made this statement: "He (referring to the proposed purchaser), says that this is the best offer that he can make and would like you to send us an answer by return mail, if at all possible." No answer by the defendants was made to this letter.

About a week later the defendants, who then were living at Rocky Ford, Colorado, received a letter from another broker in Canon City, in which it was stated that he thought he had a purchaser for the property. In response thereto defendants came to Canon City and made sale of the property for $4025 to Mr. Salie, the prospective purchaser who had previously made to plaintiffs a cash offer of $4,000.

When plaintiffs learned of this sale they demanded of defendants their commission of $200 which they claimed to have earned under the agency contract, and after defendants refused to pay it, they brought this action. In their complaint they assert they are entitled to recover compensation for their services, in connection with the sale of the premises, in the same amount they would have been entitled to receive, had they consummated the sale under the terms of the agency agreement; because, having

procured, in the first instance, Salie as a proposed pur-
chaser, defendants prevented them from carrying out their
part of the agreement by dealing directly with the buyer.
In other words, their contention is that, after they were
appointed as agents, through their efforts in the usual man-
ner of real estate brokers, they secured a prospective pur-
chaser, with whom they were negotiating with diligence,
and while so negotiating with him, the defendants ceased
communication with the plaintiffs and themselves began
negotiations with the same buyer, knowing him to be the
customer of the plaintiffs, and thereby prevented further
negotiations and sale begun by the plaintiffs, and them-
selves completed the negotiations with him.

They also urge that there was collusion between the de-
fendants and Salie, to whom defendants made the convey-
ance, whose object was to prevent the plaintiffs from re-
ceiving their commission by making the sale themselves.

The defense is that the plaintiffs had more than a rea-
sonable time for securing a purchaser, ready, able and
willing to buy, upon the stipulated terms, and that they
did not procure such a purchaser within a reasonable time,
or at all.

The plaintiffs, in a letter to the defendants of October
14, 1920, informed defendants that the best offer that they
had received for the property was $4,000 cash, but that
out of this sum defendants would be required to pay plain-
tiffs' commission of $200. It will be observed that this
was not an offer upon the terms prescribed by the owners,
and it also appears that the offer which plaintiffs made to
Salie, the proposed purchaser, was for more than $200
above the net sum which the defendants agreed that the
sale might be made for. The plaintiffs specifically in this
letter said that Salie's offer of $4,000 is the best that he
can make, and they would like an immediate answer from
the defendants as to whether they would accept the same.

It is doubtful if the complaint states a cause of action,
because it does not appear therein that the plaintiffs had
procured a purchaser able, ready and willing to buy, upon

defendants' terms, or that it was probable that they could or would, within a reasonable time, have effected a sale had defendants not interfered. The defendants say, and we think they are right, that they were justified in believing that the plaintiffs not only had not made, but that there was no probability that they would succeed in making, a sale to Salie upon the prescribed terms. The defendants did not answer the letter just referred to, and about a week thereafter, as already stated, they received a letter from another agent in Canon City that he had a purchaser for the property to whom the defendants afterwards made the sale in question, upon the terms which they had authorized the plaintiffs to sell for.

There is no evidence in the record, as we read it, of any collusion between the defendants and this purchaser. On the contrary, the defendants, when they came to Canon City from Rocky Ford in response to the letter referred to, did not know that this proposed purchaser was Mr. Salie, and did not know of it until after they had reached Canon City shortly before the sale was made. Mr. Salie himself refused to have any negotiations with the defendants until after he had given the plaintiffs notice that, unless his offer was accepted within a certain time, his deal with them was off and that he would have no further negotiations with them. Compliance with Salie's terms was not made, and he announced to the plaintiffs that the deal through them was off, and that the last word had been said by him. This information was communicated to the defendants by Salie after they arrived at Canon City, and Salie did not enter into negotiations with them until after he had notified plaintiffs that the deal was off, and he would have no further negotiations with them.

The defendants' theory of the case is that they had a right to rely upon the statements of the plaintiffs made in the letter of October 14th that Salie had made to them the best offer that he would, or could, make.

As the agency was not exclusive, the defendants had the right, either by themselves directly or through some other

agent, to make the sale as they did to Salie upon the same terms on which the defendants authorized the plaintiffs to sell, and which plaintiffs were unable to do in their negotiations with Mr. Salie, through no fault whatever of the defendants. If the jury believed the evidence of the defendants and their witnesses, as they evidently did, this verdict must be sustained unless there was some error in the instructions of the court, or in its rulings on the evidence. Indeed, the chief reliance of the plaintiffs is upon alleged errors of the court in its instructions, and such assignment is the only one that calls for discussion.

We have examined these instructions with care and find no error in them. Apparently the plaintiffs submitted to the court a number of instructions, but they complain only of refusal to give their requested instructions No. 4, 5 and 6.

No. 4, based upon the theory that while the plaintiffs were, in good faith, using diligent effort to bring the defendants and Salie together in an agreement as to the terms of the sale, and while such negotiations were in progress, they were interfered with by the defendants who negotiated directly with Salie, is not based upon any evidence in the case. There is no evidence that, after the letter of October 14th was written by the plaintiffs to the defendants, in which they said that the $4,000 cash offer for the property, less their commission of $200, was all that the defendants would get out of the proposed sale, if they accepted the offer—coupled with the statement that Salie had notified the plaintiffs that his offer was the best that he could make—that the plaintiffs ever intended to, or did, make any further effort with Salie to get him to buy at the net price fixed by the defendants. In other words, there is no evidence in this record to which instruction No. 4, asked for by the plaintiffs, is applicable. Insofar as anything therein is pertinent to the case made, it was fully covered by the instructions given by the court of its own motion. This instruction likewise is based in part upon the proposition that the plaintiffs, while in good

faith they were making further efforts to induce Salie to buy upon the stipulated terms, the defendants themselves, through another agent, took advantage of the efforts of the plaintiffs, before a reasonable time had elapsed for the latter to consummate the sale, and began negotiations themselves with such purchaser. There is no such evidence of further efforts.

Requested instruction No. 6 contains the same vice as the others, and such parts of No. 6 as were proper were given by the court in its instructions.

It is true that in the case of an agency, not exclusive, and where the time is not limited, the owner of property may not, before the lapse of a reasonable time, step in and take advantage of a failure on the part of the plaintiff to sell, by inducing the agent's proposed purchaser to deal' directly with the owner. No such case as this has been made by the evidence. The court, of its own motion, gave proper and appropriate instructions applicable to such a case as was made by the evidence, and in accordance with repeated decisions of this court. It is also the law that an owner of property may not, even though an agency is not exclusive, prevent the agent from consummating a sale to a proposed purchaser whom he has secured, so long as the agent in good faith, and for a reasonable period of time, is endeavoring to consummate the sale. That, however, is not the case made by the plaintiffs' own testimony, even if the evidence introduced by the defendants is eliminated. While we do not base our decision upon the fact, it is true, nevertheless, that there is no testimony in this record offered by the plaintiffs which tends to prove that the purchaser they secured was either ready, able or willing to purchase upon the terms which the plaintiffs themselves submitted to him. For that reason alone the judgment below might be affirmed.

While it may not have been necessary for plaintiffs to state to the proposed purchaser the net price which the defendants were to receive, still it is true that they never

asked for or received an offer from the proposed purchaser for the net price which the defendants were willing to take. If defendants' evidence was true, and the instructions of the court contained no error, these brokers were not entitled to their commission merely because they procured a purchaser. Assuming the defendants' testimony to be true, as we are justified in doing, the brokers were not the proximate, or contributing, cause of the sale which was made by the defendants, through another agent, to this purchaser. The plaintiffs never succeeded in bringing the minds of the buyer and seller to an agreement of sale at the price and terms upon which sale was authorized by the owner, and there is no proof that they probably could or would have succeeded, within a reasonable time, in doing so. In the absence of such proof the right to a commission does not accrue. That has been often decided by this court. In reaching our conclusion we have not overlooked section 1, chapter 136, of the Laws of 1915, which provides that no real estate broker is entitled to commission until such sale is consummated, or is defeated by the refusal or neglect of the owner to consummate the same as agreed upon. Possibly this provision of our statute has worked no change in the law as declared by previous decisions of this court. However that may be, we do not find it necessary to say just what this section of the statute means, since the decisions of this court abundantly sustain the rulings upon the evidence, and the instructions of the trial court, which merely summarize the established doctrine in this jurisdiction. Of numerous authorities that might be cited in support of this judgment, we refer only to *Chaffee v. Widman,* 48 Colo. 34, 40, 41, 108 Pac. 995, 139 Am. St. Rep. 220; 19 Cyc. 257; *Gilmore v. Bolio,* 165 Mich. 633, 131 N. W. 105, 34 L. R. A. (N. S.) 1050; *Sibbald v. Bethlehem Iron Co.,* 83 N. Y. 378, 38 Am. Rep. 441.

The judgment can not be disturbed, and it is accordingly affirmed.

MR. JUSTICE TELLER, sitting for MR. CHIEF JUSTICE SCOTT, and MR. JUSTICE BURKE concur.