## No. 19,935.

Rex T. Garrett, etc., *v.* Elton L. Richardson, et al.
(369 P. [2d] 566)

Decided March 12, 1962.

Mr. RICHARD N. GRAHAM, for plaintiff in error.

Mr. JACK P. SAKDOL, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE HALL.

THE parties appear here in the same order as their appearance in the trial court. We refer to the plaintiff in error as the broker and to the defendants in error as the owners.

On January 31, 1960, the owners signed and delivered to the broker an exclusive, irrevocable, listing of their home for sale for the sum of $19,250.00. This listing was "accepted" in writing by the broker and recites that: "In consideration of the services of the undersigned real estate broker" the owners grant to him "for a period of 90 days * * * the exclusive and irrevocable right to sell" the property. The agreement further provides that in case of any sale by the *owners,* the *broker,* or by *any person* during the period for which listed, the broker shall be entitled to his commission.

During this ninety-day period, the broker advertised the property for sale and made unsuccessful attempts to sell the property. Just prior to expiration of the ninety-day period, the owners, in writing, by them signed, extended the listing until May 31, 1960, and reduced the sale price $500.00.

The broker showed the property to Mr. and Mrs. Leitz, prospective buyers, on May 7, 1960, and again on May 9, 1960. On May 12, 1960, the Leitz' executed and delivered to the broker an offer to purchase the property. The broker then contacted the owners who declined to accept the offer for the reason that the same was not in compliance with the terms of the extended listing. At that time the owners notified the broker that they had decided not to sell the property and to take it off the market. To this the broker demurred, stating that he had an exclusive and unexpired listing, whereupon he was handed a letter signed by the owners, which letter notified the broker to put the price back up to $19,250.00 or take the house off the market.

The broker did neither, but did, on May 27, 1960, procure from the Leitz' a new offer to purchase, which was in strict conformity with the extended listing with the price of $18,750.00. The owners refused to accept this offer or to sell the property.

On October 21, 1960, this action was commenced to recover $1,125.00, being the agreed commission on a sale at the price of $18,750.00.

Trial was to the court, at the close of which findings were made of the facts above recited, including a finding that the Leitz' offer to buy was in "conformance with the original listing except as to the reduced price," and that the "listing agreement was effectively extended to May 31, 1960, at a reduced sale price of $18,750.00."

The trial court, among other things, concluded that on May 12, 1960, the listing "agreement was an executory agreement on both sides," and the owners had the right and privilege to revoke the exclusive, irrevocable, authority prior to the expiration of the listing agreement.

Judgment was entered for the owners. The broker is here by writ of error seeking reversal.

Only one question is presented, and that is:

■ Where owners of property desiring to sell, con-

tact or are contacted by a broker desiring to undertake the sale thereof, and in good faith sign an exclusive, irrevocable, listing agreement for a reasonable specified time, by which the owners list their property with the broker for sale and agree to pay a specified commission if the property is sold during the listing period, "in consideration of the services of the undersigned real estate broker," and where the broker in reliance thereon and in good faith advertises the property for sale, shows it to prospective purchasers and during the period of the listing produces a buyer who is ready, willing and able to buy upon the terms set forth in the listing, may the owners revoke the broker's authority and be relieved of the obligation to pay the commission as provided in the listing? The trial court answered that question in the affirmative. In so finding we think the court erred.

 Here we have a document in which the owners expressly agree to do certain things. The broker does not expressly agree to do anything. Courts uniformly hold that such a document is not a binding contract until some service is rendered by the broker looking to the sale of the property. Until that occurs the authority granted to the broker may be revoked by the owner.

The desires and intentions of the parties to this document are most evident. The owners wish to sell their property and to that end enlist the aid of the broker. The broker desires to earn a commission and there is an implied promise on the part of the broker to do something to bring about the event that will serve the desires of each.

The fact that the owners extended the period of the listing and lowered the price is strong evidence of the fact that they were not dissatisfied with the broker's efforts up to that point.

The evidence is undisputed that during the time granted in the listing and extension, the broker placed a "for sale" sign on the property, regularly advertised it

for sale, presented it to prospective purchasers and made a suggestion carried out by the owners that the location of a piece of furniture be changed to make the property more saleable. Finally he produced a buyer ready, able and willing to buy on the terms prescribed.

■ Though the document on which the broker predicates his claim may, at the time the parties signed the same, have been a "nudum pactum," unilateral and unenforceable as an executory contract because of lack of consideration, all such objections disappear when the broker, in good faith, in compliance with his implied promise to make an effort to sell the property, devoted his time and energy to accomplish the purpose the parties had in mind when they signed the document. See, *Jahn v. Park Hill Co.*, 141 Colo. 343, 347 P. (2d) 772.

■ Though there are authorities supporting the contention that the owners may revoke the broker's authority at any time prior to presentation to them of an offer of a buyer ready, able and willing to buy, we find that the weight of authority is that an exclusive, irrevocable, listing for a fixed time becames a binding and legal obligation of the owners when the broker expends money or performs services in furtherance of his own and the owners' purposes.

*Hutchinson v. Dobson-Bainbridge Realty Co., Inc.*, 31 Tenn. App. 490 (1946), 217 S.W. (2d) 6, presents a fact situation strikingly similar to the case before us. In that case the court points out the division in the authorities, lists the arguments pro and con, and refers to many cases of courts of last resort, texts, law review articles, and other sources dealing with the problem, and concludes that the weight of authority and the better rule is that a contract such as we have here means what it says and is enforceable. That court said:

"In this case, however, there was no exchange of promises, no mutuality, no consideration when defendant signed the writing. By it he appointed plaintiff exclusive

agent for 90 days and promised to pay plaintiff the commission in case of a sale within that time. But plaintiff made no promise, did not agree to try to sell, but was free to do as it chose. The writing itself was not binding as a contract. It was only an offer to make a unilateral contract — an offer of a promise not for a counter promise but for an act to be performed, a sale.

\* \* \*

"Did this offer ripen into a contract or binding obligation? The consideration for the offer was the performance of an act, a sale. Plaintiff manifested its assent to the offer and began performance of the consideration and continued performance for four or five weeks, spending time and money in its efforts to complete performance. Was this part performance an acceptance of the offer and a sufficient consideration to make the offer irrevocable, or to turn it into a completed contract?

"The question whether part performance of the consideration may make such an offer irrevocable has sharply divided judicial opinion. On one side, some authorities hold that no amount of part performance can suffice to make such an offer irrevocable, and that the offeror may revoke his offer at any moment before full performance, whatever the hardship that may result to the offeree. \* \* \* [numerous authorities cited].

\* \* \*

"Despite such hardship, many courts, in such a case as the one before us, hold that the principal has the right to revoke his offer and the broker's agency at any time before the broker has actually procured a purchaser. \* \* \* [numerous authorities cited].

"A greater number of courts, however, hold that part performance of the consideration may make such an offer irrevocable, and that where the offeree or broker manifests his assent to the offer by entering upon performance and spending time and money in his efforts to perform, then the offer becomes irrevocable during

the time stated and binding upon the principal according to its terms. * * * [numerous authorities cited].

"We think this is the better rule. The theoretical difficulties, formidable as they seem, are outweighed by considerations of practical justice. This rule avoids hardship to the offeree, and yet does not hold the offeror beyond the terms of his promise. It is true by such terms he was to be bound only if the requested act was done; but this implies that he will let it be done, that he will keep his offer open till the offeree who has begun can finish doing it. At least this is so where the doing of it will necessarily require time and expense. In such a case it is but just to hold that the offeree's part performance furnishes the 'acceptance' and the 'consideration' for a binding subsidiary promise not to revoke the offer, or turns the offer into a presently binding contract conditional upon the offeree's full performance. * * * [numerous authorities cited]."

The Supreme Court of Missouri came to conclusions similar to those of the Tennessee Court in the well reasoned and extensively documented case of *Chamberlain v. Grisham,* 360 Mo. 655, 230 S.W. (2d) 721.

■ We subscribe to the reasoning and conclusion of the Tennessee Court of Appeals and hold that here the owners' attempted revocation was without right insofar as the broker is concerned, and that he, during the period of the listing as extended, having produced a buyer ready, able and willing to buy pursuant to the terms set forth in the extension, is entitled to his commission.

Counsel for the owners relies heavily on *Lambert v. Haskins,* 128 Colo. 433, 263 P. (2d) 433, where this court pointed out that:

"* * * The sole question to determine here is whether or not the owner of land, after he has given an exclusive agency to sell his property for a specified period of time, can, during that period of time, himself sell the property

without being liable to the agent for a breach of contract or for a commission."

In deciding this question in the affirmative, the court said:

"* * * The commission is payable only in case of the agent's finding a purchaser, and the agent takes his chances on the owner himself making a sale. The only effect of such a contract as the one now before us is to forbid the owner from placing the property in the hands of any other agent. Under such a contract as this the owner has the right to sell the property himself without in any way violating his obligation to his agent. * * *."

That language has no application to this case, for here it makes no difference by whom the property is sold during the listing period. The agreement provides that on such sale by "the undersigned owner, the undersigned broker or any other person," the owner "agrees to pay said broker 6% of the selling price for his services."

The judgment is reversed and the cause remanded with directions to the trial court to enter judgment as prayed for in the complaint.

MR. CHIEF JUSTICE DAY and MR. JUSTICE PRINGLE concur.