Jewell I. STAUBUS, Plaintiff,

v.

Lewis R. REID d/b/a Barry County Real
Estate of Monett, Missouri,
Defendant-Respondent,

and

Robert Justus and Mary Justus d/b/a
United Farm Agency of Aurora, Mis-
souri, Defendants-Appellants.

No. 12789.

Missouri Court of Appeals,
Southern District,
Division One.

May 16, 1983.

David P. Vandagriff, Monett, for defend-
ant-respondent.

Joseph D. Woodcock, Aurora, for defend-
ants-appellants.

TITUS, Judge.

Plaintiff, the previous owner of a Barry
County farm which she sold to the Browns,
filed an interpleader action (Rule 52.07,
V.A.M.R.) against defendants Reid and Jus-
tus to determine which of the defendants
was entitled to the $20,000 real estate sales
commission for the sale of the farm. The
trial court adjudged that defendant Reid
was entitled to the commission less $250
attorneys fees to plaintiff's lawyer for
bringing the interpleader action. Defend-
ants Justus appealed.

The farm was placed with both set of
defendants as brokers under an open listing
agreement, an arrangement which awards
the sole commission to the first broker to
produce a ready, willing and able buyer,

and who first notifies the seller that he has such a buyer. The arrangement is aptly referred to as the "race of the contract."

In June 1981 the Browns came to Barry County from Nebraska hopefully looking for land to be used in their occupation of raising horses. The Browns had no prior contacts with defendants and denied having seen the advertisements of defendants anent the farm. Upon their arrival in Barry County, the Browns espied one of Reid's real estate signs and noted his address and telephone number. However, their arrival was early morning and they found few real estate offices open save that of defendants Justus. Mr. Justus supplied the Browns with various advertising flyers, one of which described plaintiff's farm, and drove the Browns to that location. As it was then raining, the trio stayed mostly in the automobile as they spent some 45 minutes inspecting the farm except for the interior of the farmhouse for which Justus then had no key. Albeit Justus offered to obtain a key, the Browns said they did not particularly care to see the inside because, as the Browns testified at trial, their initial reaction to the farm was negative as the exterior of the house was not to their liking and the asking price was more than they wanted to spend. Justus then proceeded to take the Browns to inspect other farms before returning to his office. In due time plaintiff was notified by Justus that he had shown her farm to the Browns.

The same day the Browns had been with Justus, they contacted Reid, looked at property and found none satisfactory to them. Nevertheless, the Browns arranged with Reid to see another farm the following day. The farm they saw on the morrow was plaintiff's farm which they had viewed a day earlier, although they did not tell Reid they had already seen the property until their second tour had been completed. During the tour conducted by Reid, the Browns were able to inspect more of the property than done under Justus' showing, and, in addition, were able to see inside the house twice which they recounted was "one of the big drawing points" in their decision to buy. The Browns also testified that Reid was more knowledgeable concerning the farm and how it could be adapted to raising horses. In all, the Browns and Reid spent three or four hours inspecting the farm and the structures thereon.

After viewing the farm a second time, the Browns told Reid that they had previously seen the farm, though they had signed no contract, and that they were now interested in buying the farm. Since the price was more than they had wanted to spend, Reid began to help them with the financing. Reid's work included acting as intermediary between the Browns and plaintiff and negotiating an arrangement whereby plaintiff would personally finance the sale. He spent a substantial amount of time and money in getting the entire arrangement organized. Justus, on the other hand, called plaintiff during this time and informed her of the situation, along with his opinion that if the sale went through she may have to pay two commissions. He also called the Browns three times and told them that if he was not paid the sale might end up in litigation. Once plaintiff had tendered the $20,000 commission into the registry of the lower court, that court found that Justus had not found a ready, willing, and able buyer, but had, actually, attempted to prevent the sale from going through after Reid had consummated the deal. The entire commission was awarded to Reid, and this appeal followed.

Justus asserts that the lower court erred in its award of the commission to Reid in that under applicable case law it was he who set in motion a series of events that resulted in the sale of the plaintiff's farm, and thus it is he who must be awarded the entire commission.

■ The law in this area is that although it is material and important to determine who first found or discovered the prospective purchasers, such a determination is not conclusive. It is entirely proper for the owners of real estate to place it in the hands of more than one broker for sale; and where this is done and a sale is made, the commission will, in the absence of a

distinct contract to the contrary, belong to the agent whose efforts are the procuring cause of the sale, regardless of which one closes it. *Holman v. Fincher,* 403 S.W.2d 245, 249[1, 2] (Mo.App.1966). For a real estate broker's services to constitute the "procuring cause" of a sale, the broker's initial efforts in calling the prospective purchaser's attention to the property must have set in motion a series of events which, without break in continuity, and without interruption in negotiations, eventually culminates in the sale. *E.A. Strout Realty Agency, Inc. v. McKelvy,* 424 S.W.2d 98, 102[5] (Mo.App.1968). And in reviewing the lower court's ruling we are bound by a standard of review requiring that the judgment be affirmed unless there is a firm belief that it is wrong. *Mix v. Broyles,* 567 S.W.2d 696, 698 (Mo.App.1978).

 The evidence shows, and the lower court found, that although Justus had made the initial contact with the Browns, he was not able to turn the situation into a sale. In fact, the Browns said that they were definitely not interested in the property after Justus had shown it to them, a conclusion which is supported by the fact that they did not even desire to see the inside of the house.

Reid, on the other hand, seemed to have the greater knowledge of the farm and therefore the greater ability to persuade the prospective purchasers. His detailed knowledge of the farm's history and possible uses apparently impressed and persuaded the Browns to spend more than they had initially desired. And once the decision to buy was made, Reid worked to arrange a suitable financing arrangement for all parties, while Justus was attempting, through his telephone calls, to prevent the sale from going through. The court said in *Holman,* supra, 403 S.W.2d at 250, that a broker "... is not entitled to commissions upon a transaction negotiated through the efforts of another broker without his aid or following his own unsuccessful efforts, even though he had found or first contacted the ultimate contracting party, showed him the property involved, or interested him in it, or

had provided the principal with such party's name."

We cannot say with a firm belief that in light of all the evidence the lower court's judgment was wrong in awarding the broker's commission to Reid; therefore, the judgment must be affirmed.

The excellent briefs of counsel for both appellants Justus and respondent lead us to the conclusion that the requested oral argument of the cause would not be beneficial to the court. Therefore, previous requests for oral argument are denied and, per our Rule 1(e), Missouri Rules of Court, 14th ed. 1983, p. 453, the cause has been determined as if submitted on briefs.

FLANIGAN, P.J., GREENE, C.J., and CROW, J., concur.