**Lawrence F. MACK, individually and d/b/a Larry Mack Realty, Plaintiff-Appellant,**

v.

**Lowell M. McKANNA, Trustee, Elm Distributors, Inc., Profit Sharing Trust, Defendant-Appellee.**

No. 83CA0430.

Colorado Court of Appeals, Div. II.

May 10, 1984.

Rehearing Denied June 7, 1984.

Certiorari Denied Sept. 17, 1984.

Johnson, Makris & Hunsaker, P.C., Nicholas Makris, William J. Hunsaker, Denver, for plaintiff-appellant.

Hall & Kinney, Stevens P. Kinney, II, Denver, for defendant-appellee.

STERNBERG, Judge.

Plaintiff, Lawrence F. Mack (broker), individually and d/b/a Larry Mack Realty, brought suit, pursuant to § 12–61–201, C.R.S., to recover a real estate broker's commission of $250,000, plus interest. The trial court ruled that there was no express contract between the broker and defendant because there had been no meeting of the minds on the material issue of whether the broker would be entitled to the commission if he produced a willing buyer but the defendant sold the property to another buyer. However, the trial court also concluded that there was a contract implied in law and on a *quantum meruit* theory awarded the broker $50,000 plus interest pursuant to § 5–12–101, C.R.S. (1983 Cum.Supp.).

The broker appeals, contending the trial court erred in not awarding $250,000, plus interest, on either a theory of express or implied contract, and defendant contends the trial court erred in permitting recovery on the basis of *quantum meruit*, and in calculating the amount due. We reverse and remand with directions for the trial court to enter judgment for the broker for $250,000, plus interest, on the basis of an express contract.

Lawrence F. Mack, doing business as Larry Mack Realty, is a licensed real estate broker in the state of Colorado. Defendant Lowell F. McKanna (trustee), was the trustee of Elm Distributors, Inc., Profit Sharing Trust (seller).

In September 1981, the broker met with the trustee's father, and informed him that he might have a buyer for some property owned by the seller. The trial court found that the father (agent) was acting as an agent for the trustee in connection with his dealings with the broker concerning this property, and that the trustee had full authority to sign a contract for the sale of the property owned by the seller, to accept offers to purchase, and to sell the property.

The broker told the agent that he thought he could sell the property for $6,250,000, and wanted to show it to Richard Rossmiller of the Heritage Financial Corporation (Heritage). The agent gave his approval. Rossmiller told the broker

that he did not want to look at the property until a listing contract had been signed between the broker and the seller in order to ensure that his company's offer would not be used to entice a higher bid from another potential buyer.

Accordingly, the agent prepared a one party listing which provided:

"Dear Mr. Mack:

We agree to one party listing—namely.

Mr. Richard Rossmiller

Heritage Financial Corporation of Denver

You advised that you have quoted $6,250,000.00 for the sale of our building and land—1621 18th Street. $6,000,000.00 Net to ELM Distributors, Inc. Profit Sharing Trust with a commission of $250,000.00 to your firm."

The document was signed by both the broker and the trustee.

Heritage offered to buy the property for the $6,250,000 listing price. The agent then advised Equity Association, another potential buyer which had previously offered $5 million for the property, of this bid. Equity thereupon increased its offer to $6,100,000, and the trustee accepted this offer. No commission being involved in the sale, the trust realized $100,000 more than it would have from a sale to Heritage.

The broker then filed this suit, seeking his commission on the basis of the one party listing contract. The trial court found that there was an agreement of some kind between the parties, but concluded that there was no meeting of the minds as to the conditions under which the commission was owed to the broker. It noted that the broker believed the commission was owed when he produced the specified buyer, Heritage, ready, willing, and able to purchase the property for $6,250,000, while the agent and trustee believed the commission was not owed unless the property was actually sold to Heritage. However, the court concluded that the broker had provided valuable services to the trust by enabling it to get Equity to increase its offer substantially, and it awarded the broker $50,000 plus statutory interest.

## I.

■ The broker first contends that the trial court erred in holding that he was not entitled to the agreed upon commission of $250,000 after he produced the specified buyer who was ready, willing, and able to purchase the property on the seller's terms, and the seller refused to consummate the sale. We agree.

The trial court found that there was an agreement between the parties, but that it was deficient because it had not included provisions for what would happen if the broker procured the requisite offer but the seller decided not to accept it. The court also found that the broker had procured the buyer who was "ready, willing and able to complete the purchase of the real estate as proposed" by the seller, and that the seller had thwarted the sale.

■ The general rule is that a real estate broker is entitled to receive a commission "when he has procured for his client a party who is ready, willing and able to enter into contract with the agent's principal *on the terms which the latter has stipulated.*" 10 *S. Williston, Contracts* § 1287 at 957 (W. Jaeger 3rd ed. 1977 rev. vol.) (emphasis added); *see* § 12–61–201, C.R.S. Although the seller could have so specified in the letter agreement its agent provided, there was no stipulation by the seller that a sale had to be consummated before the commission was owed. *See* 10 *S. Williston, Contracts, supra; Hecht v. Meller*, 23 N.Y.2d 301, 296 N.Y.S.2d 561, 244 N.E.2d 77 (1968).

Thus, under the terms of the agreement specified in the letter from the agent, the broker's obligation was satisfied when he procured for the seller the specified buyer, Heritage, who was ready, willing, and able to purchase the property on the seller's terms. *See Circle T Corp. v. Deerfield,*

166 Colo. 238, 444 P.2d 404 (1968); *Pueblo v. Leach Realty Co.*, 149 Colo. 92, 368 P.2d 195 (1962). The sale was defeated by the refusal of the seller to consummate at the agreed upon price. Hence, the trial court erred in ruling that there was no meeting of the minds as to when the commission was owed.

## II.

 The broker also argues that the trial court erred in the amount of interest awarded. We disagree.

The right to interest for a liquidated sum where there is no express agreement as to the rate thereof is governed by § 5–12–102, C.R.S. (1983 Cum.Supp.). Section 5–12–102(2), C.R.S. (1983 Cum.Supp.), provides, in pertinent part:

"When there is no agreement as to the rate thereof, creditors shall be allowed to receive interest at the rate of eight percent per annum compounded annually for all moneys after they become due on any bill, bond, promissory note, or other instrument of writing . . . ."

Here, based on the express single party listing set out in the agent's letter, the broker's commission became due as a matter of law when the broker produced a buyer ready, willing, and able to purchase the property, and interest at the statutory rate began to accrue at that time. *See Hayes v. North Table Mountain*, 43 Colo. App. 467, 608 P.2d 830 (1979). Hence, the trial court applied the correct rate of interest.

The judgment is reversed and the cause is remanded with directions for the trial court to enter judgment for the broker for $250,000, plus interest at the rate of eight percent per annum, compounded annually.

PIERCE and SMITH, JJ., concur.