Erik FALLENIUS, d/b/a Nevasca
Realty, Plaintiff–Appellee,

v.

S. Bradley WALKER and Frank E.
Morgan, Defendants–Appellants.

No. 88CA1372.

Colorado Court of Appeals,
Div. I.

Dec. 21, 1989.

Rehearing Denied Jan. 25, 1990.

Certiorari Denied May 29, 1990
(90SC110).

Carpenter & Klatskin, P.C., Willis Carpenter, Denver, for plaintiff-appellee.

Brownstein, Hyatt, Farber & Madden, P.C., Kenneth R. Bennington, Denver, for defendant-appellant S. Bradley Walker.

Cashen & Cheney, Donald E. Cashen and Marla K. Thoe, Montrose, for defendant-appellant Frank E. Morgan.

Opinion by Judge PIERCE.

Defendants, S. Bradley Walker (Walker) and Frank E. Morgan (Morgan), appeal from the judgment entered in favor of plaintiff, Eric Fallenius d/b/a Nevasca Realty (Nevasca), awarding Nevasca $93,500 plus accrued interest. We reverse.

Nevasca brought this action to recover a real estate broker's commission in connection with the sale of real property owned by Morgan. The case was submitted to the trial court on a written stipulation of facts.

In 1973, Morgan entered into a written agreement with Charles P. Hughes (Hughes) and Marshall Hughes giving Hughes a right of first refusal to purchase property Morgan owned in San Miguel County. The relevant portion of the contractual language reads as follows:

"Should Seller desire to sell any of such property, Buyer shall have a first right of refusal to purchase the same upon the same terms and conditions as offered by any third party under a bona

fide contract of sale for any portion of the said property owned by Seller offered for sale."

In early 1987, Morgan entered into an open listing contract with Nevasca to sell the property in question for a purchase price of $935,000. The open listing contract contained the following commission provision:

"I hereby agree to pay said broker 10% of the selling price for his services in case of any sale by the undersigned broker or upon the said broker finding a purchaser who is ready, willing and able to complete the purchase as proposed by the owner. *In case of a sale made by any person other than the undersigned broker, this listing contract is void and of no effect.*" (emphasis added)

The open listing agreement also contained the following express provision concerning Hughes' right of first refusal:

"Charlie Hughes has 2 weeks Right of 1st Refusal to match any offer submitted by Nevasca Realty."

On May 30, 1987, Hughes granted to Walker an option to purchase the property upon Hughes' exercise of his right of first refusal. Walker agreed to provide the funds for Hughes to complete the purchase from Morgan, and Hughes agreed to reconvey the property to Walker immediately upon closing the Morgan purchase.

Nevasca obtained an offer from Peter G. Backus to purchase the property for $935,000, and the earnest money sales contract dated June 1, 1987, between Morgan and Backus provided that: "Upon *closing of this contract,* seller agrees to pay to broker a commission of 10% of the purchase price for services *in this transaction.*" (emphasis added) The Morgan–Backus contract also gave express notice of Hughes' right to purchase the property on the same terms and conditions as offered by Backus under a bona fide contract of sale and provided that:

"[t]he closing of this contract shall be on the first business day *following expiration of the right of first refusal in favor of (Hughes).*" (emphasis added)

Morgan notified Hughes of the Backus offer, and Hughes claimed he was entitled to exercise his right of first refusal for a price of $841,500 (the $935,000 purchase price to Backus, less the $93,500 broker's commission Morgan would have owed Nevasca upon closing of the sale to Backus). Morgan rejected this claim, and on June 24, 1987, Hughes exercised his right of first refusal on the same terms and conditions as the contract between Morgan and Backus (including the $935,000 purchase price). We do not address the timeliness of these exercises of the right of first refusal since the parties have not raised that issue.

By separate letter agreement dated June 24, 1987, the parties agreed that ten percent of the $935,000 purchase price would be deposited with the district court in conjunction with a claim for declaratory relief concerning the disposition of the $93,500. Hughes assigned his rights under the letter agreement to Walker.

On June 25, 1987, Morgan sold the property to Hughes for $935,000 and Walker became the owner of the property. Morgan and Backus subsequently entered into a mutual release and discharge of their earnest money contract.

The trial court awarded the $93,500 to Nevasca, concluding that Nevasca was entitled to a commission because it had procured a purchaser ready, willing, and able to purchase the property. The trial court also concluded that to award the sum to Morgan would result in a "windfall" to which he was not entitled and that to award the sum to Walker would amount to permitting Hughes to purchase the property at a price less than that offered by Backus, in violation of the terms of the right of first refusal. The trial court, therefore, concluded that the theory of unjust enrichment also supported its award of the $93,500 to Nevasca.

I.

■ Morgan and Walker contend that the trial court erred in concluding that Nevasca earned a ten percent commission by presenting the Backus offer to Morgan. We agree with their contention.

Written contracts that are complete and free from ambiguity express the intention of the parties and will be enforced according to their plain language. *In re May*, 756 P.2d 362 (Colo.1988). The open listing agreement gave Nevasca express notice of Hughes' right of first refusal and declared the commission provision would be void in case of a sale by any person other than Nevasca. Further, the Morgan–Backus earnest money contract provided that a ten percent commission would be payable only upon closing of the Morgan–Backus contract and that closing could not take place until after Hughes' right of first refusal had expired.

Nevasca's reliance on *Mack v. McKanna*, 687 P.2d 1326 (Colo.App.1984) is misplaced. In that case, we stated that: "Although the seller could have so specified in the letter agreement its agent provided, there was no stipulation by the seller that a sale had to be consummated before the commission was owed." *See Circle T Corp. v. Deerfield*, 166 Colo. 238, 444 P.2d 404 (1968).

We conclude that the procurement of the Backus offer by Nevasca did not entitle Nevasca to a commission under the terms of the open listing contract.

### II.

■ Morgan and Walker also contend that the trial court erred in concluding, as a matter of law, that the theory of unjust enrichment entitled Nevasca to a commission of ten percent on the sale from Morgan to Hughes. We agree.

As to the alternative theory relied on by the trial court:

> "To recover under a theory of quasi-contract or unjust enrichment, a plaintiff must show (1) that a benefit was conferred on the defendant by the plaintiff, (2) that the benefit was appreciated by the defendant, *and (3) that the benefit was accepted by the defendant under such circumstances that it would be inequitable for it to be retained without payment of its value....*" *Cablevision of Breckenridge v. Tannhauser Condominium Ass'n*, 649 P.2d 1093 (Colo.1982) (emphasis supplied).

Although the Backus offer may have proved helpful to Morgan, we find no circumstances in the record that would allow the trial court to ignore the parties' express contractual language which made Nevasca's right to a commission contingent upon the closing of the sale to Backus. *See Brady v. Hoeppner*, 38 Colo.App. 495, 558 P.2d 1009 (1977).

The record shows that the ultimate buyer, Hughes, was not procured by Nevasca but had a contractual right of first refusal from Morgan fourteen years before Morgan listed the property with Nevasca. The clear and unambiguous language of the contracts prevented Nevasca from earning a commission on the sale to Hughes, and therefore, those contracts must be enforced as written. *See Griffin v. United Bank*, 198 Colo. 239, 599 P.2d 866 (1979).

### III.

■ Walker, as successor to Hughes, contends that he is entitled to the $93,500 because Hughes was entitled to exercise his right of first refusal by paying Morgan ten percent less than the price agreed upon in the Morgan–Backus earnest money contract. We disagree.

In *Culley v. Grand Junction Legion Building Corp.*, 138 Colo. 254, 331 P.2d 514 (1958), our supreme court rejected optionees' similar contention saying: "The option clause of the lease did *not* provide the 'best bona fide offer net to lessor.'" (emphasis in original) Rather, the optionee was entitled to exercise his right to purchase only if he met the same terms and conditions as the "best bona fide offer" received by the seller.

Hughes' right of first refusal was to purchase the property "upon the same terms and conditions as offered by any third-party under a bona fide contract of sale." In their earnest money sales contract dated June 22, 1987, Morgan and Hughes agreed to a purchase price of $935,000 and made no provision for payment of any real estate commission.

We agree with the trial court's conclusion that to award the funds to Walker

would amount to permitting Hughes to purchase the property at a price less than that offered by Backus, in violation of the terms of the right of first refusal.

The judgment is reversed, and the cause is remanded with directions to enter judgment for Morgan in the amount of $93,500 plus any interest that has accrued to that sum while it has been in the court's custody.

METZGER and REED, JJ., concur.