**Larry MAPES, d/b/a Reata Realty, Plaintiff–Appellant,**

v.

**CITY COUNCIL OF the CITY OF WALSENBURG, a Colorado municipal corporation, Defendant–Appellee.**

**No. 05CA0104.**

Colorado Court of Appeals, Div. V.

July 13, 2006.

Buxman Kwitek & Ohlsen, P.C., Mark A. Ohlsen, Pueblo, Colorado, for Plaintiff–Appellant.

Douglas R. Manley, LaJunta, Colorado; Rothgerber Johnson & Lyons, L.L.P., Justin D. Cumming, Colorado Springs, Colorado, for Defendant–Appellee.

Opinion by Judge LOEB.

In this case for recovery of a real estate brokerage commission, plaintiff, Larry Mapes, d/b/a Reata Realty, appeals the district court's order granting the motion to dismiss of defendant, the City Council of the City of Walsenburg. We reverse and remand for further proceedings.

Mapes, a real estate broker, and the City entered into an open listing contract for the sale of a ranch owned by the City. The contract provided for a listing price of $506,000, with a minimum earnest money deposit of $10,000, and a six percent sales commission.

Shortly after entering into the contract, Mapes located a buyer who made an offer of $510,000, with an earnest money deposit of $10,000, and no contingencies. However, some six weeks later, the City entered into a contract to sell the property to another party.

Mapes filed this action for breach of contract to recover his sales commission. The City filed a motion to dismiss for failure to state a claim upon which relief could be granted, pursuant to C.R.C.P. 12(b)(5). The district court entered an order granting the City's motion. Mapes's motion for amendment of findings and judgment was deemed denied by operation of law, pursuant to C.R.C.P. 59(j). This appeal followed.

Mapes contends that the district court erred in granting the City's motion to dismiss for failure to state a claim upon which relief can be granted. We agree.

We review a trial court's ruling on a motion to dismiss de novo. In doing so, we accept as true all averments of material fact contained in the complaint and view the allegations of the complaint in the light most favorable to the plaintiff. *Brossia v. Rick Constr., L.T.D. Liab. Co.*, 81 P.3d 1126, 1129 (Colo.App.2003).

A C.R.C.P. 12(b)(5) motion to dismiss is looked upon with disfavor, and a complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief. A complaint should not be dismissed for failure to state a claim so long as the plaintiff is entitled to some relief upon any theory of the law. *Pub. Serv. Co. v. Van Wyk*, 27 P.3d 377, 385–86 (Colo.2001).

This case turns on the interpretation of the parties' open listing contract. Mapes contends that the district court erred in concluding as a matter of law that the unambiguous terms of the open listing contract preclude any award to him even if he procured a ready, willing, and able buyer. The court found that, under the contract, a broker is not entitled to a commission if the seller decides to sell to a third-party buyer not procured by the broker. We agree that this ruling was error.

In reviewing a contract, our primary obligation is to effectuate the intent of the contracting parties according to the plain

language and meaning of the contract. *Albright v. McDermond,* 14 P.3d 318, 322 (Colo. 2000). To determine the meaning of a contract, courts are guided by the general rules of contract construction and should seek to give effect to all provisions so that none will be rendered meaningless. *Roberts v. Adams,* 47 P.3d 690, 694 (Colo.App.2001). Any construction that would render any clause or provision unnecessary, contradictory, or insignificant should be avoided. *Sulca v. Allstate Ins. Co.,* 77 P.3d 897, 899 (Colo. App.2003).

We evaluate the contract as a whole and construe the language in harmony with the plain and generally accepted meaning of the words employed. We will enforce the contract as written unless there is an ambiguity in the language. *Allen v. Pacheco,* 71 P.3d 375, 378 (Colo.2003).

In determining whether an ambiguity exists, we must ask whether the disputed provision is reasonably susceptible on its face of more than one interpretation. *Allen v. Pacheco, supra.* Written contracts that are complete and free from ambiguity will be found to express the intention of the parties and will be enforced according to their plain language. *Albright v. McDermond, supra.*

We now examine the parties' contract in light of these legal principles.

The open listing contract here is on a standardized form, the printed portions of which have been approved by the Colorado Real Estate Commission. With an open listing, a broker is not the exclusive agent for the sale of the property and is only entitled to compensation upon the sale of the property to a buyer whom the agent has introduced to the selling principal. *Olsen v. Vail Assocs. Real Estate, Inc.,* 935 P.2d 975, 977 n. 2 (Colo.1997). The open listing is an offer for a unilateral contract creating in the broker the power of acceptance by procuring a purchaser ready, willing, and able to buy on the terms proposed by the owner. *See Garrett v. Richardson,* 149 Colo. 449, 369 P.2d 566 (1962); 1 *Corbin on Contracts* § 2.30, at 260–64 (J.M. Perillo, ed., rev. ed.1993); *see also* Thomas E. Schatzel, *Colorado Real Estate Broker Listing Contracts,* 35 U. Colo. L.Rev.

205, 207 (1963). The broker earns a commission by finding a ready, willing, and able purchaser before other agents or the owner finds such a purchaser, and before the owner revokes the offer. *See Garrett v. Richardson, supra; Hodgin & Sharman v. Palmer,* 72 Colo. 331, 211 P. 373 (1922); 1 *Corbin, supra,* at 264–65; *see also* Schatzel, *supra.*

Paragraph 1 of the contract here provides:

Agreement. Seller and Brokerage Firm enter into this contract as of the date set forth above. However, this Contract shall apply only to a Sale of the Property by Broker during the Listing Period ... or upon Broker procuring a buyer who is ready, willing and able to complete the Sale as proposed by Seller (collectively, Broker Sale). In the case of any other Sale, this Listing Contract is null and void and of no effect.

Paragraph 3(e) defines a Sale as "the voluntary transfer or exchange of any interest in the Property or the voluntary creation of the obligation to convey any interest in the Property, including a contract or lease."

Paragraph 13, titled "Compensation to Brokerage Firm," provides, in pertinent part:

In the case of a Broker Sale, Seller agrees that any Brokerage Firm compensation which is conditioned on the Sale of the Property shall be earned by Brokerage Firm as set forth herein . . . .

Paragraph 13(b) provides, as pertinent here:

b. When Earned. Such commission shall be earned upon the happening of any of the following:

(1) Any Sale of the Property, if a Broker Sale, within the Listing Period;

(2) Broker finding a buyer who is ready, willing and able to complete the transaction as specified herein by Seller . . . .

The contract further provides in Paragraph 13(c) that the six percent commission is "payable at the time of the closing of the Sale as contemplated by subsection 13(b)(1) ... or upon fulfillment of subsection 13(b)(2) where either the offer made by such buyer is defeated by Seller or by the refusal or neglect of Seller to consummate the Sale as agreed upon."

Neither party contends that the contract is ambiguous. Rather, each party proffers a different interpretation of the unambiguous terms of the contract. The City contends that Mapes cannot recover a commission under the open listing contract because he was not the procuring cause of the sale of the property and, pursuant to Paragraph 1, the contract was rendered null and void and of no effect when the City contracted to sell the property to a third party rather than to Mapes's potential buyer. Mapes contends that, reading all the pertinent provisions of the contract as a whole and accepting the truth of the allegations in his complaint, he is entitled to a commission because he was the first broker to procure a buyer ready, willing, and able to purchase the property on the City's terms, even if the City refused to enter into a purchase contract with his client and subsequently sold the property to a third party. We agree with Mapes.

Under the plain language of Paragraph 1 of the contract, a Broker Sale occurs when either (1) the property is sold by Mapes during the listing period, or (2) Mapes procures a buyer during that period who is ready, willing, and able to "complete the sale" as proposed by the City.

 This provision follows the general rule that a real estate broker is entitled to receive a commission when he or she has procured for his or her client a party who is ready, willing, and able to enter into a contract with the seller on the terms that the latter has stipulated. *See McCullough v. Thompson,* 133 Colo. 352, 295 P.2d 221 (1956); *Harding v. Lucero,* 721 P.2d 695, 697 (Colo.App.1986); *Daybreak Constr. Specialties, Inc. v. Saghatoleslami,* 712 P.2d 1028, 1032 (Colo.App.1985); *Mack v. McKanna,* 687 P.2d 1326, 1328 (Colo.App.1984); *see also Bossow v. Bowlway Lanes, Inc.,* 161 Ill. App.3d 983, 113 Ill.Dec. 27, 514 N.E.2d 809 (1987); *Staubus v. Reid,* 652 S.W.2d 293, 293–94 (Mo.Ct.App.1983)(open listing agreement awards sole commission to the first broker to produce a ready, willing, and able buyer, and who first notifies the seller that he or she has such a buyer).

If a seller does not perform once a qualified buyer is produced by the broker, the seller cannot thereby escape the payment of the agreed-upon commission. *See City of Pueblo v. Leach Realty Co.,* 149 Colo. 92, 94, 368 P.2d 195, 196 (1962). The rule applies even if the seller refuses to consummate the transaction and the deal fails because of such refusal. *See City of Pueblo v. Leach Realty Co., supra; Colo. Inv. Servs., Inc. v. Hager,* 685 P.2d 1371, 1376 (Colo.App.1984); *see also Hodgin & Sharman v. Palmer, supra,* 72 Colo. at 337, 211 P. at 375; *In re Tully,* 202 B.R. 481 (B.A.P. 9th Cir.1996) (real estate broker is entitled to commission when he finds a ready, willing, and able buyer, and is still entitled to commission when seller arbitrarily refuses to proceed with the transaction); *Trimmer v. Ludtke,* 105 Ariz. 260, 462 P.2d 809 (1969) (in open listing, where broker produces ready, willing, and able purchaser according to terms of listing agreement but seller refuses to enter contract of sale, broker is nevertheless entitled to a commission because the broker has fully performed that for which he or she was employed and cannot be frustrated by breach of agreement by seller); Restatement (Second) of Agency § 445 (1957); Richard Lord, *Williston on Contracts* § 62:19, at 371 (2002).

Although the owner is "not required to convey the property to the prospective buyer, he is liable for a commission to the broker," and the owner is "precluded from rejecting any valid offer in accordance with the original terms so as to avoid liability for a commission." E.R. Archambeau, Jr., *Real Estate Brokerage Commissions in Colorado,* 35 Dicta 297, 302 (1958). The fact that a contract is an open listing rather than an exclusive listing is immaterial. *See City of Pueblo v. Leach Realty Co., supra,* 149 Colo. at 95, 368 P.2d at 196; *Ginsberg v. Frankenberg,* 133 Colo. 382, 295 P.2d 1036 (1956); *Hodgin & Sharman v. Palmer, supra.*

Under the definition of "sale" in Paragraph 3(e) of the contract, a sale includes "the voluntary creation of the obligation to convey the property," that is, a purchase and sale contract. Thus, under the facts alleged in the complaint, Mapes procured a buyer ready, willing, and able to "complete the sale" on the City's terms.

The City contends that, because a sale took place to another party, the contract was null and void and of no effect, pursuant to Paragraph 1. We reject this contention.

According to Paragraph 13(b)(2) of the contract, once Mapes finds a buyer who is ready, willing, and able to complete the sale as defined in Paragraph 3(e), he achieves a Broker Sale and earns his commission. Moreover, under Paragraph 13(c) of the contract, when Mapes finds such a buyer, and the buyer's offer is defeated by the seller, the commission is due and payable. A sale is defeated when the seller refuses to consummate the sale at the agreed upon price. *See Mack v. McKanna, supra,* 687 P.2d at 1329; *see also* § 12–61–201, C.R.S.2005 (No real estate agent or broker is entitled to a commission for finding a purchaser who is ready, willing, and able to complete the purchase of real estate as proposed by the owner until the same is consummated or is defeated by the refusal or neglect of the owner to consummate the same as agreed upon.).

Here, Mapes alleged that he procured a qualified buyer and that the City then defeated the buyer's offer by selling the property to another party. In our view, the City's interpretation of Paragraph 1 of the contract would render the terms of Paragraph 13 meaningless if the contract became null and void whenever another sale took place, regardless of whether Mapes had first achieved a Broker Sale by procuring a buyer who was ready, willing, and able to complete the sale on the City's terms. We conclude the contract can be null and void pursuant to Paragraph 1 only if another sale takes place before a Broker Sale occurs.

This result is consistent with the law concerning the circumstances under which a seller may revoke a broker's authority pursuant to an open listing contract. In general, a broker's authority under an open listing is effectively terminated by express revocation or otherwise, most commonly by the sale of the property. *See W.W. Chambers, Inc. v. Audette,* 385 A.2d 10, 14 (D.C.1978). However, once a broker has produced a buyer who is ready, willing, and able to purchase the property upon the terms set forth in the listing, the seller may no longer revoke the broker's authority under the open listing and be relieved of the obligation to pay the commission. *See W.W. Chambers, Inc. v. Audette, supra;* Schatzel, *supra* (open listing is revocable by owner only before the broker performs by finding a ready, willing, and able buyer); *see also Garrett v. Richardson, supra,* 149 Colo. at 455, 369 P.2d at 570 (articulating similar limitation on seller's right to revoke broker's authority under exclusive listing contract).

Therefore, under Paragraph 1 of the contract, as properly construed, "any other sale" of the property could only serve to revoke Mapes's authority under the open listing and render the contract null and void where such sale occurs prior to Mapes's having performed under the contract by procuring a ready, willing, and able buyer.

The City argues that the interpretation of the contract we adopt here will have a chilling effect on the use of open listing contracts in Colorado because the City may have to pay two commissions, one to Mapes and one to the broker for the other party who purchased the property after Mapes had procured a qualifying offer from a ready, willing, and able buyer. However, under the terms of the contract, that is an economic risk that the City voluntarily assumed. Although it was not obligated to sell the property to Mapes's proposed buyer, the City may not avoid paying Mapes a commission, once he had performed under the open listing, merely because it chose to sell the property to someone else. Moreover, we perceive no practical concern that a seller under an open listing may ultimately have to pay more than two commissions, because once a broker submits an unconditional offer from a ready, willing, and able buyer, the seller may revoke the authority of other brokers under the open listing. *See W.W. Chambers, Inc. v. Audette, supra,* 385 A.2d at 14–15.

We reject the City's reliance on *Fallenius v. Walker,* 787 P.2d 203 (Colo.App.1989), for the proposition that the contract was rendered null and void when the property was sold to a buyer not procured by the broker. In *Fallenius,* the open listing contract contained an express provision recognizing a right of first refusal by a third party to purchase the subject property, which was then exercised by that party, and thus the

broker did not earn his commission. Moreover, the purchase contract between the broker's buyer and the seller contained an express provision that a broker commission would only be payable upon closing of the contract. *Fallenius v. Walker, supra,* 787 P.2d at 204.

Here, by contrast, there is no contractual provision expressly requiring a closing on a contract between the City and Mapes's proposed buyer before a commission is earned and payable. To the contrary, Paragraph 13 of the contract clearly provides that the commission obligation is applicable and payable either at the time of closing of a Broker Sale or upon Mapes's finding a buyer who is ready, willing, and able to complete the transaction on the City's terms and such buyer's offer is defeated by the City. *See Mack v. McKanna, supra.*

We also reject the City's contention that this interpretation of the open listing contract is contrary to the Colorado Real Estate Commission Manual, which states that, in an open listing, "only the broker who is the procuring cause of the sale is entitled to a commission." The Manual does not state, however, that multiple brokers must be permitted to bid up the price while the seller ignores a broker who has presented a qualifying offer from a ready, willing, and able buyer. Here, Mapes alleged that he procured a ready, willing, and able buyer and was, accordingly, the procuring cause of a "Broker Sale," as defined in the parties' contract. Thus, nothing in the language of the Manual serves to defeat Mapes's claim for a commission.

Because Mapes alleged facts in his complaint that, if true, would entitle him to a commission under the unambiguous terms of the contract, we conclude the district court erred as a matter of law by granting the City's motion to dismiss.

The order is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge DAILEY and Judge WEBB concur.